**UNITED STATES of America,**
**Appellant**

**v.**

**PHILIPPINE NATIONAL BANK, as**
**guardian of Salvador Tranas, Jr.,**
**a minor, Appellee.**

**No. 16125.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 21, 1961.

Decided May 18, 1961.

Petition for Rehearing Denied
June 23, 1961.

Mr. Arnold R. Petralia, Attorney, Department of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. George S. Leonard, Acting Asst. Atty. Gen. at the time the brief was filed, and Oliver Gasch, U. S. Atty. at the time of argument, and John G. Laughlin, Jr., Attorney, Department of Justice, were on the brief, for appellant.

Mr. Harold J. Nussbaum, Washington, D. C., with whom Mr. Nathan M. Lubar, Washington, D. C., was on the brief, for appellee.

Before PHILLIPS, Senior United States Circuit Judge of the Tenth Circuit,* EDGERTON and BAZELON, Circuit Judges.

---

* Sitting by designation pursuant to Sec. 294(d), Title 28 U.S.Code.

1. "(C) if no widow or widower entitled thereto, or child, to the dependent mother or father of the insured, if living, in equal shares * * *."

National Service Life Insurance Act of 1940, § 602(d) (2), 38 U.S.C. (1946 ed.)

---

EDGERTON, Circuit Judge.

The government appeals from a judgment that the Bank as guardian of a minor is entitled to recover so-called "gratuitous" National Service life insurance. The minor is the illegitimate child of an insured serviceman who never married. The serviceman was killed in action in the Philippines on October 23, 1944. For men in his situation Congress had provided $5000 of insurance, without application or premium, "because many of the personnel of our armed forces (1) were unable to comply with the prerequisites necessary to the granting of insurance by reason of extended duty in the North Atlantic, Hawaii, the Philippines, and other outlying bases; (2) had failed or neglected to apply for such insurance in the expectation that their service would be peacetime service only; and (3) by reason of the suddenness with which war was thrust upon us, had not sufficient time to apply for such insurance prior to engaging in combat." 38 U.S.C. (1946 ed.) § 802(d) (4), 55 Stat. 847.

The question here is whether an illegitimate child is a child within the meaning of the statute, which made gratuitous insurance payable " * * * (B) if no widow or widower entitled thereto, to the child or children of the insured, if living, in equal shares * * *."[1]

In ordinary usage a man's illegitimate child is his child. The normal presumption is that Congress uses words in their ordinary sense. The government therefore has the burden of showing that when Congress said "child" it meant "legitimate child".

The provision for gratuitous insurance was generous legislation, plainly adopted for humane and patriotic rea-

---

§ 802(d) (2), 55 Stat. 846. See 38 U.S.C. (1946 ed.) §§ 802(d) (3) (B), 802(d) (5), 56 Stat. 657, 658. The Act remains in force as to insurance in effect December 31, 1958. 38 U.S.C. (1958 ed.) § 788.

sons. Neither its language, its legislative history, nor its explanatory clause, persuades us that Congress wished to exclude from its benefits the child of a soldier who was not married to the child's mother. Since the child is not at fault there is no reason to penalize him. We are not persuaded that Congress thought otherwise. We agree with the District Court that we should not interpolate the word "legitimate" before the word "child".

38 U.S.C. (1946 ed.) § 801(e) provides that "The term 'child' includes an adopted child." The government argues that if Congress had intended the term "child" to include an illegitimate child it would have declared this intention in similarly express language. This argument ignores the fact that while a natural child is commonly regarded as the child of his natural parents, an adopted child is not so commonly regarded as the child, without qualification, of his adoptive parents. If Congress wished to include adopted children it was normal to say so, but if Congress wished to include illegitimate children it was not necessary to say so.

In providing for "regular" or "contract" National Service Life Insurance, Congress said: "The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided * *." 38 U.S.C. (1946 ed.) § 802(g), 54 Stat. 1010, as amended by 56 Stat. 659. The government contends that by expressly permitting the insured to designate an illegitimate child as beneficiary of a contract of insurance, while not expressly mentioning such a child in connection with gratuitous insurance, Congress showed an intention to exclude illegitimate children from the benefit of gratuitous insurance. This is one possible explanation, but not the only one, of "an illegitimate child" being expressly mentioned in one section of the Act and not in another. An equally possible explanation is that Congress thought it safe to assume the Veterans Administration would know that as a matter of common usage an illegitimate child is the child of his parents, but thought it unsafe to assume that every soldier who might apply for contract insurance would know this fact of common usage. If everyone knew all the ordinary meanings of words there would be much less need for dictionaries. The Supreme Court has said of this Act: "The statutory provisions, where ambiguous, are to be construed liberally to effectuate the beneficial purposes that Congress had in mind." United States v. Zazove, 334 U. S. 602, 610, 68 S.Ct. 1284, 1288, 92 L.Ed. 1601. We therefore prefer the second of the two possible explanations.

Affirmed.