**PHILIPPINE NATIONAL BANK, as Guardian of Guillermito Tawaran, a minor, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16573.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 21, 1961.

Decided Feb. 15, 1962.

Petition for Rehearing Denied March 19, 1962.

Mr. Harold J. Nussbaum, Washington, D. C., with whom Mr. Nathan M. Lubar, Washington, D. C., was on the brief, for appellant.

Mr. Peter C. Charuhas, Attorney, Department of Justice, for appellee. Asst. Atty. Gen. William H. Orrick, Jr., Messrs. David C. Acheson, U. S. Atty., John G. Laughlin, Jr., and David V. Seaman, Attorneys, Department of Justice, were on the brief for appellee.

Before EDGERTON, BAZELON, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

The question is whether failure of the primary beneficiary of gratuitous National Service Life Insurance [1] to file a timely claim bars recovery by a secondary beneficiary. Jose T. Tawaran, a United States soldier, died in action in the Philippines April 15, 1942. His widow filed no claim until December 20, 1949, which was not within the period allowed by the statute. The Veterans Administration denied her claim as such but originally allowed it as a claim on behalf of the couple's minor son, born March 15, 1941, and made an award to him. Appellant Bank qualified as the minor's guardian and received insurance benefits for him. The Veterans Administration afterwards terminated the award. The Bank repaid on demand the benefits it had received, sued on January 4, 1961, for the entire $5000 of insurance, and now appeals from an adverse judgment.

Congress provided this gratuitous insurance, which requires neither application nor premium, "because many of the personnel of our armed forces (1) were unable to comply with the prerequisites necessary to the granting of insurance by reason of extended duty in the North Atlantic, Hawaii, the Philippines, and other outlying bases; (2) had failed or neglected to apply for such insurance in the expectation that their service would be peacetime service only; and (3) by reason of the suddenness with which war was thrust upon us, had not sufficient time to apply for such insurance prior to engaging in combat." 38 U.S.C.

---

1. 38 U.S.C. § 802(d) (2) (1952). Although the National Service Life Insurance Act of 1940, 54 Stat. 1008–1014, as amended, 55 Stat. 846, has been repealed and parts of it have not been re-enacted, provisions relevant to this litigation remain effective by virtue of a savings clause, 38 U.S.C. § 788 (1958). The pertinent repealed provisions were included in the 1952 edition of the United States Code.

§ 802(d) (4) (1952), 55 Stat. 847. The Supreme Court has said of this Act: "The statutory provisions, where ambiguous, are to be construed liberally to effectuate the beneficial purposes that Congress had in mind." United States v. Zazove, 334 U.S. 602, 610, 68 S.Ct. 1284, 92 L.Ed. 1601. We said in United States v. Philippine National Bank, "The provision for gratuitous insurance was generous legislation, plainly adopted for humane and patriotic reasons." 110 U.S. App.D.C. 250, 251–252, 292 F.2d 743, 744–745. We there interpreted the word "child", in the statutory enumeration of beneficiaries, as including an illegitimate child. See also Woodward v. United States, 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 648; Carpenter v. United States, 3 Cir., 168 F.2d 369, 3 A.L.R.2d 841.

■ It is clear and unquestioned that not only the insured and his widow, but also his child, were within the class of persons whom Congress intended to benefit. The question is whether the statute is so drawn that the child's right depends upon the widow's and his claim is barred when hers is.

The statute makes gratuitous insurance benefits payable "(A) to the widow or widower of the insured, if living and while unremarried; (B) if no widow or widower entitled thereto, to the child or children of the insured, if living * *." 38 U.S.C. § 802(d) (2) (1952). There is now "no widow * * * entitled". The widow allowed her rights to lapse. Since the statute is to be construed liberally, we think the fact that there was once a widow "entitled" is not controlling

and clause (B) applies. By its terms "the child" is entitled.

■ The statute provides that suit shall not be allowed unless it is brought "within six years after the right accrued for which the claim is made. For the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded." 38 U.S.C. § 784(b) (1958).[2] Although no right actually accrued to the child when the insured died, because his mother's rights were prior to his, appellee urges that the "contingency on which the claim is founded" was the death of the insured. If this be true, it does not follow that the claim of appellant's ward is barred. For the ward is an infant, and the statute provides that "Infants, insane persons, or persons under other legal disability * * * shall have three years in which to bring suit after the removal of their disabilities." 38 U.S.C. § 784 (b) (1958).

In the Woodward case the Court said: "The short of the matter is that Congress has not expressed itself in regard to the question before us." 341 U.S. at 113, 71 S.Ct. at 606. Perhaps this is true here. If so, we resolve the ambiguity in accordance with the settled principle that this legislation is to be construed so as to give effect to its humane purpose. Nothing in the statute requires us to think Congress intended a child's rights to be cut off before they arose. We are told that the Veterans Administration formerly took a view similar to ours.

Reversed.

2. Claims may be filed in the Veterans Administration within seven years after the insured's death, but a proviso says persons "mentally or legally incompetent at the time the right to apply for * * *

death benefits expires, may make such application at any time within one year after the removal of such disability." 38 U.S.C. § 802(d) (5) (1952).