**William Junius SHELLIE, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5604.**

District of Columbia Court of Appeals.

Argued April 7, 1971.

Decided May 20, 1971..

As Amended June 9, 1971.

Colie B. Chappelle, appointed by this court, for appellant.

Daniel J. Bernstein, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty. were on the brief, for appellee.

Before KERN, NEBEKER and YEAG-LEY, Associate Judges.

NEBEKER, Associate Judge:

This appeal, aside from presenting an issue respecting harmless failure to properly present and hear a pretrial motion to suppress, illuminates problems of general administration warranting guiding observations by this court. Although appellant does not claim a too speedy trial,[1] he does complain that his announced readiness for trial ten days after arraignment required the trial judge to entertain a last minute oral motion to suppress before the jury was

1. Creed v. United States, D.C.Mun.App., 156 A.2d 676 (1959).

sworn. Our examination of the record convinces us that such a motion was frivolous and that failure to entertain it was an error or defect "which [does] not affect the substantial rights of the [appellant]."[2] Hall v. United States, D.C.App., 252 A.2d 894 (1969). It being our statutory command to apply the harmless error rule, the judgment of conviction of carrying a pistol without a license[3] is affirmed.

The record reveals that the police responded to a radio run for a man with a gun and a possible robbery in progress. Upon arriving at the address, a delicatessen, numerous people were seen inside near the front. One placed his hand inside his coat and was immediately seized and searched for weapons. As this was going on, appellant proceeded to the rear behind a meat counter. He was observed, ordered to halt and return, and then searched. At this time a gun was observed on the floor behind the counter where appellant had been. When recovered, it was noted that the gun was warm to the touch, presumably from body contact.[4]

We think it quite clear from this record that appellant lacked standing to complain of the seizure of the gun. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Lee v. United States, 95 U.S. App.D.C. 156, 221 F.2d 29 (1954); Burton v. United States, 272 F.2d 473, 476–477 (9th

Cir.), cert. denied, 362 U.S. 951, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960); Haerr v. United States, 240 F.2d 533, 535 (5th Cir. 1957); United States v. Copeland, 263 F.Supp. 976, 980 (S.D.N.Y. 1967). It was appellant's own suspicious and furtive effort in retreating to the rear of the store which brought attention to him before he was arrested. No search of his constitutionally protected environs disclosed the weapon or resulted in its seizure. Brown v. United States, D.C.App., 261 A.2d 834 (1970). Indeed, appellant denied ever seeing the gun or going behind the meat counter.[5] Accordingly, refusal to hear the motion to suppress does not render the judgment vulnerable to attack. Hall v. United States, *supra.*

The sequence and procedure followed in the trial court do, however, merit some discussion. A speedy and rapid disposition of criminal cases, whether by trial or otherwise, is a goal long, and often unsuccessfully, sought. It is commendable that counsel and the trial court were able to accommodate a jury trial within ten days of arraignment. But such promptness should never cause a nonfrivolous constitutional claim to go unheard. If counsel felt he had a basis to move to suppress he should not have announced ready for trial in assignment court with the hope of getting an oral motion heard by the assigned trial judge. This is particularly so when the

2. *See* Section 111 of the District of Columbia Court Reorganization and Criminal Procedure Act of 1970, Pub.L. 91–358, July 29, 1970, § 11–721(e), 84 Stat. 481, D.C.Code 1967, § 11–721(e) (Supp. IV, 1971). While this court has always observed the harmless error rule through its rule-making authority, the Congress, through that Act, now directs its application by this court similarly to federal courts under 28 U.S.C. § 2111. *See also* § 11–946 of the D.C.Code as it makes Fed.R.Crim.P. 52(a) applicable to the Superior Court and that court's Criminal Rule 52(a).

3. *See* D.C.Code 1967, § 22–3204.

4. Appellant's counsel, who was also trial counsel, complains that a discrepancy be-

tween appellant's dress and the description given in the radio run could have been significant had he been heard on the oral motion to suppress. Since we conclude, *infra,* that no Fourth Amendment right of appellant was violated in the recovery of the gun, it becomes immaterial that probable cause to arrest him may not have existed before the gun was found where he presumably abandoned it.

5. When asked at oral argument whether appellant was precluded from offering a different version of the facts by the refusal to hear the motion to suppress we were told, not surprisingly so, that the only thing appellant could have done was attack discrepancies in the description of the suspect referred to in the radio run. *See* note 4, *supra.*

rules required a written motion before the trial date. Hall v. United States, *supra*. Instead, counsel should have explained to the assignment judge his desire and the shortness of time and requested an appropriate postponement of the trial.

In our review of the record we noted that the transcript of proceedings contains many pages totally unrelated to the point trial counsel raises on appeal. When asked at oral argument why such parts of the proceedings as voir dire and opening and closing statements were included in the order for transcript, counsel for appellant stated that he thought he remembered inflammatory and prejudicial remarks by the court and the prosecution at those stages. None were found, however, on his examination of the transcript and its accuracy is not challenged.

The limited extent to which a transcript is ordinarily to be prepared at public expense for a convicted indigent represented by new counsel on appeal is set forth in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), *See* Gaskins v. United States, D.C.App., 265 A.2d 589 (1970). However, in cases such as this when trial counsel intends or anticipates prosecuting an appeal it is essential that he be prepared at the time of sentencing, or promptly thereafter, to exercise his professional judgment regarding the issues to be raised on appeal and what portions of the transcript, if any, will be required to pursue the appeal. *See* Tate v. United States, 123 U.S.App.D.C. 261, 269–270, 359 F.2d 245, 253–254 (1966). By doing this, counsel can assist the trial judge in promptly preparing the transcript order. In this way it will be possible to eliminate needless and wasteful preparation of trial transcript and thus greatly reduce the demands on court reporters.[6]

In the future, members of the bar appointed to represent an indigent convicted of crime should hold themselves ready to prosecute the appeal if taken. In that connection, we again observe that assignment of trial counsel is the general practice of this court in criminal appeals by indigents. Gaskins v. United States, *supra*, 265 A.2d at 593.

The judgment of conviction is

Affirmed.

---

6. We are informed a similar practice is followed by the United States Court of Appeals for the Second Circuit and understand it to be helpful in expediting appeals.