Charles M. **WILLIAMS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 6016.

District of Columbia Court of Appeals.

Argued Jan. 26, 1972.

Decided Feb. 29, 1972.

Rehearing Denied March 14, 1972.

Robert F. Steeves, Washington, D. C., appointed by this court, for appellant.

Robert D. Zsalman, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Margaret Lee Cross, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER and NEBEKER, Associate Judges, and QUINN, Associate Judge, Retired.

NEBEKER, Associate Judge:

This appeal arises out of a conviction for carrying a pistol without a license,[1] after appellant's unsuccessful attempt to obtain an order of suppression. The question presented is whether the actions of police officers, as a part of an immediate investigation of a recent crime, and in response to appellant's furtive actions, were reasonable under the circumstances. Under the rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we find the necessary "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion"[2] which ultimately resulted in the seizure of a pistol. Appellant's other contentions being without merit, we affirm.

The record reveals that at about 11:30 p. m., two scooter squad officers responded

---

1. D.C.Code 1967, § 22–3204.

2. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

to a radio run regarding a man who was screaming in an alley. They proceeded to the location, a high crime area,[3] to investigate, and upon arrival they observed a scout car parked in a nearby alley. A man in the back seat of the car was bleeding profusely from his face and hands. The scooter squad officers were told that there had been a "robbery holdup" and that the lookout was for two Negro males. They were also told that the escaping culprits had fled down the alley. The scooter squad officers proceeded down and through the alley, turned around and were proceeding back when they saw appellant, a Negro male, standing in the alley near what appeared to be a garage door.

As the officers approached him, appellant turned his back and began fumbling with something in front of him. The distance between appellant and the scene of the robbery was four or five hundred feet and only a few minutes had elapsed since the time of the robbery. Officer Franck, observing an old crumpled paper bag in appellant's right hand, asked what he was doing in the alley. Appellant said he was coming from a store. Officer Franck testified that he was not satisfied with appellant's answer because he knew that the closest open store at that time of night was four and one-half to five blocks away. He asked appellant a second time what he was doing in the alley. There was no reply. Officer Franck then asked what he had in the bag. The officer testified that appellant

> "became hesitant, and his answers were not clear or straight, and he hemmed and hawed. I asked him, again, what he had in the bag, and he handed me the bag. By the time I got the bag in my hand, he said, 'that's not my gun. That's not my gun. That's not my gun.' . . . I then opened the bag . . . and I

reached inside and there was a .32 Harrington and Richardson revolver."

Appellant's version of the encounter differs slightly, but is conceded as being "consistent and virtually identical."[4]

Contrary to the Government's position, appellant claims that the *Terry* approach to this police conduct is inapplicable here because the facts show no protective frisk. He further contends that the intrusion by the police amounted to an arrest and that the standard of probable cause must be met to validate the police action. While the courts must be careful to avoid applying the *Terry* approach as a lowest common denominator for difficult arrest cases, we conclude that this case factually fits with the *Terry* rationale respecting reasonably based limited intrusions on fourth amendment rights.

Here, as in *Terry*, the initial encounter with the police was a necessary part of fresh investigative measures required under the circumstances. The specific facts that were before Officer Franck, including legitimate inferences therefrom, were sufficient to reasonably justify the protective actions taken by the officer. Officer Franck's testimony reveals that his concern for his safety was primarily directed toward the bag the appellant was carrying. He said:

> "I was still straddling my scooter, *and I had my hand on my gun butt.* I didn't know who he was or what he was doing in the alley. He appeared quite suspicious to me. When I first saw him, he turned his back to me and was fumbling with something in front of him. That aroused my suspicion, even further, as to why he was in the alley, at that time, right after a robbery.
>
> "I went down to him. *After I got there, he had this bag in his hand, and,*

---

3. *Cf.* Munn v. United States, D.C.App., 283 A.2d 28 (1971); Peterkin v. United States, D.C.App., 281 A.2d 567, 568 n. 4 (1971).

4. Appellant's Brief at 13.

*not knowing what was in the bag, I had my hand on my gun butt. . . . "* [Emphasis supplied.]

We do not view the *Terry* decision as being so inflexible in application as to apply only to cases where the police pat the outer clothing of the suspect. This officer could reasonably have been more concerned about the contents of the bag. It is important to note, however, that we express no view on the constitutionality of an initial search inside the bag for it was opened only after appellant handed the bag to the officer and exclaimed, "That's not my gun." We deal only with the brief stop and inquiry as to the contents of the bag. Both were reasonable. After the exclamation, appellant was properly arrested for carrying the weapon, the seizure of which was amply justified.

The order denying appellant's motion to suppress, not being erroneous, and the conviction otherwise being unimpaired, the same is

Affirmed.

### ORDER

On consideration of appellant's petition for rehearing on the issue of denial of oral argument on the motion to suppress and of the record on appeal and the briefs of the parties and

(1) the court being of the view that there were no genuine issues of material fact and that as a matter of law the motion to suppress was properly denied; and

(2) the court further being of the view that were it to hold appellant possessed and was denied a right to make argument before the motions judge such error would not effect his substantial rights, *see* D.C. Code 1967, § 11–721(e) (Supp. IV, 1971), it is this 14th day of March, 1972,

Ordered that the aforesaid petition is denied.