Agustin VIOLA, Appellant.

v.

UNITED STATES of America.

No. 71–1901.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 14, 1972.

Decided June 13, 1973.

Henry F. Lerch, Washington, D. C., for appellant.

Robert C. Wesley, Atty., Dept. of Justice, with whom L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed, Harold H. Titus, Jr., U. S. Atty., and Walter H. Fleischer, Atty., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and HARRISON WINTER,* Circuit Judge for the Fourth Circuit.

PER CURIAM:

Agustin Viola is a farmer and shepherd on the island of Negros near the southern end of the Philippine archipelagian chain. Viola is the son of Hilario Dagoy, a Philippine national who fought for the United States in World War II (71st Field Artillery) and who gave his life in that conflict. Viola sued the Veterans' Administration for benefits to which he claims he is entitled because of his father's military service.

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

Of the various benefit programs Congress has established for veterans and their families, two are relevant to this case: (1) Dependency and Indemnity Compensation is essentially a monthly pension paid to the widow or children of a veteran whose death is service-connected;[1] (2) Gratuitous National Service Life Insurance is an insurance program that provides a $5,000 payment to beneficiaries of qualified veterans.[2] Agustin Viola has been receiving Dependency and Indemnity Compensation payments since 1958. However, his applications for Life Insurance benefits have been denied on the ground that they were not timely filed. In this suit Viola challenges that denial.

The record shows that when the plaintiff was 14 years old, his mother, Maria Viola, had a letter prepared in which she expressed her intention "to apply for death compensation on account of the services rendered by the late veteran HILARIO DAGOY". The letter explained that the application was being made on behalf of Dagoy's illegitimate son, Agustin Viola. Srta. Viola signed the letter with a thumbprint and mailed it to the Veterans' Administration (V. A.) on June 9, 1956.

The V.A. responded by sending Srta. Viola an application form for Dependency and Indemnity Compensation. The agency did not send an application for National Service Life Insurance benefits, apparently because the V.A. considered illegitimate children ineligible for insurance benefits at that time. Srta. Viola completed the application form she had received. After a careful investigation, the V.A. confirmed that Agustin Viola was the son of Hilario Dagoy; the agency awarded him Dependency and In-

demnity Compensation beginning in 1958.

On May 18, 1961, in the *Tranas* decision,[3] this court held that an illegitimate child is entitled to receive gratuitous life insurance benefits if either parent was covered by the program. Under this ruling, Viola is an eligible beneficiary of such benefits. The V.A. did not inform Viola of this fact, however, and because of the remoteness of his home,[4] he did not learn of our decision until late in 1964. Viola filed a formal application for insurance benefits on Dec. 4, 1964. By statute, such applications must be filed by the applicant's 22nd birthday;[5] Viola filed his at the age of 22 years, six months. His application was rejected as untimely by the Veterans' Administration, and this action followed.

We think the V.A. is in error in asserting that Viola's 1964 letter was his first application for insurance benefits. Rather, the initial application came in Maria Viola's 1956 request for the benefits due her son. We think that letter, couched in general terms, can only be reasonably interpreted as a request for all benefits to which Agustin Viola was entitled.[6] To suggest that an illiterate Philippine farm woman intended to make fine distinctions among various sections of the veterans' laws strains credulity beyond tolerable limits.

Moreover, there were continuing contacts between Agustin Viola and the Veterans' Administration following Srta. Viola's initial letter. There was first the patrimonial investigation, which culminated in the award of Dependency and Indemnity Compensation in 1958. Then, in November, 1961—six months after we issued the *Tranas* opinion—Vi-

---

1. *See* 38 U.S.C., Chapt. 13, Subchapt. II (1970 Ed.).

2. *See* 38 U.S.C. § 802(d) (1952); 38 U.S.C. § 788 (1970). The government agrees that Hilario Dagoy was covered by the program.

3. United States v. Philippine Nat'l Bank, as Guardian of Tranas, 110 U.S.App.D.C. 250, 292 F.2d 743 (1961).

4. By his own account, Viola has spent most of his life "in my field in the mountains of Valencia, Negros Oriental, Philippines." Appellant's brief at 5.

5. 38 U.S.C. § 802(d)(5) (1952).

6. This reading is compelled not only by common sense but also by the broadly inclusive statutory definition of what constitutes a valid claim. 38 U.S.C. § 784 (h) (1970).

ola was granted school attendance benefits. In January, 1962, Viola's compensation award was reviewed and modified by the V.A. Thus it can hardly be said that the formal (1964) application for insurance benefits came to the government as a bolt out of the blue.

We do not suggest here that the Veterans' Administration had a duty to track down and notify all eligible illegitimate children of veterans following our decision in *Tranas*. We do not suggest that the agency was at fault in failing to provide Viola or his mother the forms necessary for filing an insurance claim. But Agustin Viola was not at fault either. "Since the child is not at fault, there is no reason to penalize him. We are not persuaded that Congress thought otherwise." *Tranas, supra,* 110 U.S. App.D.C. at 252, 292 F.2d at 745. This conclusion comports with the expansive tenor of case law concerning the National Service Life Insurance program. Decisions in this court and elsewhere [7] reflect a generous attitude toward eligible beneficiaries, in keeping with the "humane and patriotic" purposes for which this "generous legislation" was passed. *Tranas, supra,* 110 U.S.App.D.C. at 251–252, 292 F.2d at 744–745. When the Veterans' Administration received the 1964 application, it was under an obligation to consider it a renewal of a part of the 1956 request on which it had not yet acted.

█ Since we find that Viola's initial application for National Service Life Insurance benefits was filed prior to his 22nd birthday, we rule that the trial judge erred in granting the government's motion for judgment on the pleadings. The government has also argued in this court that Viola's law suit was initiated after the time period for filing such an action had run. Appellant's request was filed in 1956 and denied sometime in 1965. Since the statute was tolled during this period, the government's argument is without merit. Timoni v. United States, 135 U.S.App. D.C. 407, 419 F.2d 294 (1969).[8] Accordingly, the case must be remanded for appropriate proceedings.[9]

Reversed and remanded.

TAMM, Circuit Judge (dissenting):

My inability to concur in the majority opinion is based upon my conclusion that my brethren set forth an excuse rather than a reason for their reversal of the district court. The governing statute, 38 U.S.C. § 802(d)(5) (1952 edition), is exact, precise and final in providing that any applicant for death benefits "may make such application at any time within one year after the removal of such disability." Since appellant's infant status terminated on May 7, 1963, he obviously was required to "make such application" no later than May 7, 1964. He did not do so and the Congress has mandated that he thereby forfeited whatever claim he had to these benefits.

With a nobility of purpose but without authority in law the majority create a solution of their own for what they obviously consider is an unfortunate situation. Despite my admiration for the suppleness of adaptation which makes their end result possible, I feel it is reached only by ignoring the validity of legal principles. Recognizing that as jurists we are engaged in a never-ending

7. United States v. Philippine Nat'l Bank, 110 U.S.App.D.C. 250, 251, 282, 292 F.2d 743, 744–745 (1961). *See also* Philippine Nat'l Bank v. United States, 112 U.S. App.D.C. 126, 128, 300 F.2d 718, 720 (1962); United States v. Zazove, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601 (1942); United States v. Vandver, 232 F.2d 398 (6th Cir. 1956).

8. The government did not attempt to make much of this argument; but the fact that it was raised at all in the face of direct authority in this court to the contrary seems to indicate the same "intransigent attitude" in this area of law for which Judge Holtzoff criticized the government in Rodulfa v. United States, 295 F.Supp. 28, 30 (D.D.C.1969).

9. We note that Viola's attorney has asked this court for an award of fee under 38 U.S.C. § 784(g) (1970). We leave the determination of the appropriate fee to the trial court on the remand. Moran v. Veterans' Administration, 115 F.Supp. 640, 642 (E.D.Mich.1963); Rodulfa v. United States, 295 F.Supp. 28 (D.D.C. 1969).

but never accomplished quest for justice, I still believe our mandate is to effectuate the will of the Congress rather than to substitute our own subjective views of what constitutes that justice in a particular case. In distorting congressional purpose, or in supplanting congressional objectives with our own purposes and objectives, we are usurping a power which does not belong to us. For judges to think otherwise is not a mistake but a delusion.

The majority opinion with a jaunty confidence utilizes a Janus faced "generous attitude toward eligible beneficiaries" and "humane and patriotic purposes" in reaching a point at which it is impossible to arrive by the statutory provisions. Apparently this route is pursued in the vain hope that somehow the result is within the perimeter of Chief Justice John Marshall's "it must be on the general spirit and object of the law, not on [its] letter." Grant v. Raymond, 31 U.S. (6 Peters) 217, 240, 8 L.Ed. 376 (1832).

Again acknowledging the charitable motivation of the majority, I must conclude that the result is completely indifferent to the governing law. I would affirm.