**DISTRICT OF COLUMBIA, Appellant,**

v.

**M. E. H., Appellee.**

**No. 6439.**

District of Columbia Court of Appeals.

Argued July 2, 1973.

Decided Nov. 28, 1973.

As Amended Dec. 5, 1973.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and David P. Sutton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Mervin Cherrin, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, PAIR, YEAGLEY and HARRIS, Associate Judges, sitting en banc.

PAIR, Associate Judge:

This appeal by the District of Columbia (District) raises an important question respecting the jurisdiction of this court to review orders of the Family Division of the Superior Court, entered at the prehearing stage of a juvenile delinquency proceeding. The appeal was heard initially by a division of this court which, by an order entered April 23, 1973, dismissed the appeal for want of jurisdiction—one judge dissenting. However, upon petition for rehearing en banc, the court on May 24, 1973, vacated the opinion and order of the division and ordered that the case be reheard by the court sitting en banc.

By petition filed in the Family Division of the Superior Court, it was charged (1) that M. E. H., a child, " . . . did carry on or about his person a pistol, without a license as required by law" in violation of D.C.Code 1973, § 22–3204, and (2) that "said child had in his possession or under his control a firearm, to wit, a pistol which had not been registered with the Metropolitan Police Department, in violation of Article 51, Section 1 of the D. C. Police Regulations."

On motion of the child the court suppressed as evidence the pistol and suppressed also certain statements made by the child prior to his arrest. The District appealed and was met at the threshold with a challenge to its right to appeal,[1] the specific contention being that the child, although petitioned for carrying a pistol and for possessing a pistol which had not been registered, was nevertheless not charged with a criminal offense for the purposes of D. C.Code 1973, § 23–104(a)(1). We do not agree and because, in our view of the record, the suppression order was not well considered, we reverse.

We notice at the outset that a juvenile delinquency proceeding is not a criminal prosecution, that it does not result in a judgment of conviction of a criminal offense, and that no civil disability or other consequence usually associated with a criminal conviction flows from an adjudication of delinquency. See D.C.Code 1973, § 16–2318; Pee v. United States, 107 U.S. App.D.C. 47, 49, 274 F.2d 556, 558 (1959).

The simple and inescapable fact is, however, that a child involved in a delinquency proceeding is before the court only because he is charged with the commission of an offense proscribed by the criminal law. Unless, therefore, the child committed such an offense he could not under any circum-

---

1. By D.C.Code 1973, § 23–104(a)(1), it is provided that:

The . . . District of Columbia may appeal an order, entered before the trial of a person charged with a criminal offense, which . . . suppresses evidence . . . if . . . the Corporation Counsel conducting the prosecution for such violation certifies . . . that . . . the evidence is a substantial proof of the charge pending against the defendant.

stances be adjudged a delinquent.[2] Moreover, as recently pointed out in a per curiam opinion participated in by one of our dissenting colleagues:

> The rules now governing juvenile proceedings in the Superior Court provide that pleas and findings are either "guilty" or "not guilty" rather than "involved" or "not involved". *See* Super. Ct.Juv.R. 11 and 31(c). [In the Matter of: R. L. R., D.C.App., 310 A.2d 226, at 227 n. 2.]

The business the juvenile court is about is the administration of justice in accordance with humanitarian concepts now well established in our jurisprudence.[3] In the process, the applicable due process standard is fundamental fairness. *See* McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ We cannot conceive that it would be fundamentally unfair to allow the District to challenge an order entered prehearing, which suppresses evidence in a juvenile delinquency proceeding. Nor can we conceive that any of the beneficent purposes of the Juvenile Court Act will be defeated by such an appeal. We therefore construe D.C.Code 1973, § 23–104(a)(1), to include within the term "charged with a criminal offense" the term "delinquent act."[4] Neither Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957);

nor United States v. Greely, 134 U.S.App. D.C. 196, 413 F.2d 1103 (1969), requires in our opinion a different result since the holding in each case respecting the right of the government to an interlocutory appeal has received legislative disapproval.[5]

The legislative history of the District of Columbia Court Reform and Criminal Procedure Act of 1970 discloses without any serious question that the Congress intended to provide the District of Columbia with the same right to an interlocutory appeal as that provided the United States by 18 U.S.C. § 3731 (1970), as amended, whether involved is a criminal prosecution or a juvenile delinquency proceeding. To this end former D.C.Code 1967, § 23–105, was expanded[6] so as to embrace substantially the interlocutory appeals provisions of 18 U.S.C. § 3731 (1970). *See* S.Rep.No.538, 91st Cong., 1st Sess. to accompany S.Rep. No.2869 (1969). *See also* H.R.Rep.No. 907, 91st Cong., 2d Sess. on H.R.Rep.No. 16196 (1970), where commencing at 110 it is said:

> A comprehensive format for appeal by the prosecution in criminal cases is provided. Its purpose is to guarantee the public its right to a fair trial. Existing section 23–105 of the District of Columbia Code provides in pertinent part, that "In all criminal prosecutions the United States or the District of Columbia, as the case may be, shall have the same right of appeal that is given to the defendant, including the right to a bill of exceptions." Because of its general language, existing section 23–105(a), which

---

2. D.C.Code 1973, § 16–2301. Definitions.

. . . .

  (6) The term "delinquent child" means a child who has committed a delinquent act and is in need of care or rehabilitation.
  (7) The term "delinquent act" means an act designated as an offense under the law of the District of Columbia . . . .

3. In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966);

Fulwood v. Stone, 129 U.S.App.D.C. 314, 394 F.2d 939 (1967); Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106 (1967).

4. *See* note 2 *supra.*

5. *See* the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3731 (1968), and the District of Columbia Court Reform and Criminal Procedure Act of 1970. Pub.L.No.91–358, 84 Stat. 473.

6. *See* note 1 *supra.*

intended to grant the prosecution an extensive right to appeal, has been very narrowly construed by the courts. E. g., Carroll v. United States, 354 U.S. 394, [77 S.Ct. 1332, 1 L.Ed.2d 1442] (1957). It is the Committee's intent to set out in specific language those situations, which in fairness to the public, require the prosecution to have the right to appeal. . . .

. . . The only change [in § 23–104(a) from § 23–105] is the addition of the clause permitting the appeal from a pretrial order which "denies the prosecutor the use of evidence at trial," a clause necessary to overcome the excessively narrow interpretation accorded the existing statute in United States v. Greely, [134 U.S.App.D.C. 196] 413 F.2d 1103 (1969) (denial of motion to reopen suppression hearing).[7]

Moreover it is not without significance that in identifying the proceedings in which the government is permitted an interlocutory appeal, the Congress, in amending in 1968 18 U.S.C. § 3731, employed the term "criminal proceedings"; whereas, in amending, in 1970, D.C.Code 1967, § 23–105(a), the Congress employed the term "a person charged with a criminal offense."

Although, as pointed out above, a juvenile delinquency proceeding is not a criminal prosecution and could not result in a judgment of conviction of a criminal offense, the child was nevertheless charged with the commission of an offense proscribed by the criminal law or else he would not be before the court.

We turn now to the government's challenge to the order suppressing as evidence the pistol and the child's pre-arrest admissions. At the hearing on the motion to suppress there was testimony in substance as follows.

On January 28, 1972, about 11:00 p. m., there was an altercation at or near the front of a tavern. A police officer broke up the altercation and three of the persons involved went into the tavern. The police officer was informed by an unidentified person that one of the three persons who went into the tavern had a gun, that he was a "white male, with a buckskin jacket on . . . [and] long blond hair, a beard and mustache."

The police officer thereupon entered the tavern and observed four persons seated in a booth, one of whom answered the description which had been given to him. The officer identified himself and stated that he had reason to believe that one of them had a gun. The four persons were asked to stand up and the officer frisked them. Finding that none of them had a gun, the officer requested them to step out of the booth and, when they complied, the officer observed in plain view on the floor of the booth a pistol and seized it. The officer then inquired as to the ownership of the pistol and the child, the person who answered the description given the officer, replied, "[I]t's my gun, I don't want to get anybody else in trouble." The child was then placed under arrest, after which these proceedings were commenced.

Controlling in this area of Fourth Amendment considerations are the decisions of this court in United States v. Walker, D.C.App., 294 A.2d 376 (1972);[8] United States v. Frye, D.C.App., 271 A.2d 788 (1970); and Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476 (1968).

Almost directly in point is United States v. Walker, *supra*. There an unidentified informant advised two police officers that

---

7. *See also* H.R.Rep.No.1303, 91st Cong., 2d Sess. to accompany S.Rep.No.2601, Conference Report, Statement of the Managers on the Part of the House, 219, 220 (1970).

8. Decided after the trial court's disposition of the case at bar, *Walker* followed, as im-perative authority, United States v. Frye, D.C.App., 271 A.2d 788 (1970); United States v. Dowling, D.C.App., 271 A.2d 406 (1970); Gaskins v. United States, D.C.App., 262 A.2d 810 (1970).

a man named Willie described as " . . . wearing a black shirt and blue knit hat and having an artificial leg" was possessed of a pistol. A short time thereafter the officer observed four men on the porch of a dwelling, one of whom answered the description the informant had given them of Willie. Upon approaching the group, one of the officers felt the legs of the suspect and determined that one was artificial. The officers then frisked him and removed from the waistband of his trousers a loaded pistol. Influenced by the fact that the officers obtained knowledge of the suspect's possession of the pistol from an unidentified informant, the trial court suppressed as evidence the pistol. This court reversed, holding on the authority of United States v. Frye, *supra,* that there was ample justification for conducting a limited protective search for the weapon. Disposing of the contention that the officers' information was unreliable because obtained from an unidentified informant, we said:

> The credibility of a paid or professional informer may be suspect, but in our opinion the same cannot be said of a citizen reporting a crime. While the citizen here did not specifically say he had seen the pistol in Willie's possession, such was the clear inference from his report. [United States v. Walker, *supra* at 378; footnote omitted.]

■ In the case at bar the officer was informed—as was the officer in United States v. Walker, *supra*—that a man, whom the informant identified, had on his person a pistol. Entering the tavern and observing a man answering the description given him by the informant, the officer by reason of his capacity had not only the right but the duty to investigate and, in the process, to determine preliminarily whether such person was armed. United States v. Walker, *supra. See also* United States v. Frye, *supra*; United States v. Dowling, D.

C.App., 271 A.2d 406 (1970); Gaskins v. United States, D.C.App., 262 A.2d 810 (1970); Daniels v. United States, 129 U.S.App.D.C. 250, 393 F.2d 359 (1968). *See and compare* Williams v. United States, D.C.App., 287 A.2d 814 (1972); Davis v. United States, D.C.App., 284 A.2d 459 (1971); Shellie v. United States, D.C.App., 277 A.2d 288 (1971).

The trial court apparently ignored this controlling case law for, without attempting to distinguish either United States v. Frye, *supra*; United States v. Dowling, *supra*; or Gaskins v. United States, *supra,* it granted the motion to suppress the pistol saying:

> The Government has failed to show any independent evidence which substantiates the officer's testimony about the unknown informer. . . . [I]t is the opinion of this Court that the proof sufficient to sustain the Government's position under these particular conditions, when a nameless informer is involved, must include additional information.
> . . .

Because this holding flies in the face of United States v. Walker, *supra,*[9] we cannot permit it to stand. Nor can we permit to stand the trial court's holding in respect to the statements made by the child prior to his arrest. In this connection, it was said by the trial court:

> Finding the gun in the booth where these four had been sitting confirmed the officer's suspicions. At that time he had reason to believe that a crime had been committed and therefore had probable cause for an arrest. Before making any arrest, the officer questioned the men and after this questioning the Respondent [appellee] admitted ownership of the gun. The Court finds that this questioning was carried out without the precautionary warnings required by Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). . . .

9. *Cf.* Daniels v. United States, *supra.*

It is now well established that the *Miranda* warnings are not required as a condition precedent to on-the-scene, noncustodial interrogation. *See* Wells v. United States, D.C.App., 281 A.2d 226 (1971); Montgomery v. United States, D.C.App., 268 A.2d 271 (1970); Green v. United States, D.C.App., 234 A.2d 177 (1967). *See also* Allen v. United States, *supra.*

By custodial interrogation, the Supreme Court explained in Miranda v. Arizona, *supra,* 384 U.S. at 444, 86 S.Ct. at 1612:

> [W]e mean questioning initiated by law enforcement officers after *a person* has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . [Emphasis supplied; footnote omitted.]

Here, as the trial court recognized, the interrogation was addressed to "the men" rather than to the child and, in this respect, was the kind of on-the-scene group interrogation approved by this court in Wells v. United States, *supra,* 281 A.2d at 228. Said the court in that case:

> *Miranda* applies only to custodial interrogation. We do not think that the fact that a person is present and is requested to be seated during the execution of a search warrant in itself creates custody. . . . Nor do we think there was any interrogation of an accused. *To ask a group of persons not in custody* about the ownership of a coat is not an interrogation of a suspect as contemplated by *Miranda.* [Emphasis supplied; Citations omitted.]

Because the trial court erred when it suppressed as evidence the pistol and the child's non-custodial statements, the order is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

So ordered.

NEBEKER, Associate Judge, with whom HARRIS, Associate Judge, joins, concurring in the result:

While there is some surface appeal to the literal approach of the dissent, I suggest that the use of labels such as "conduct of prosecution", "defendant", and "delinquent child" is not really helpful in resolving the jurisdictional issue. An examination of D.C.Code 1973, § 16–2301(3) will disclose that "the term 'child' also includes a person under the age of twenty-one who is *charged with an offense* referred to in subparagraph (A)(i) or (C) committed before he attained the age of sixteen, or a delinquent act committed before he attained the age of eighteen."[1] (Emphasis supplied.) This definition of a "child" operates to prohibit adult prosecution in the instances specified. Thus, it readily can be seen that a "child" can be "charged with an offense" in Family Division delinquency proceedings. Accordingly, I cannot put too much stock in the purely definitional approach taken by my dissenting colleagues. Neither, I might add, is it helpful to characterize juvenile delinquency proceedings as Judge Pair does in terms of being noncriminal. While it has been customary to view the end product of the juvenile process as something other than a criminal conviction, it must be recognized that the means to that end are, in most significant aspects, by criminal process. *See* In the Matter of M. W. F., D.C.App., 312 A.2d 302 (decided November 28, 1973) (Harris, J., dissenting).

I recognize that generally government appeals are not favored, United States v. Greely, 134 U.S.App.D.C. 196, 413 F.2d 1103 (1969), but it is apparent that in the District of Columbia Court Reorganization Act of 1970, Congress did intend to enlarge the right of appeal from suppression orders and other orders excluding evidence. Ever since Carroll v. United

1. Subparagraph (A)(i) includes serious felonies such as murder, forcible rape, and armed robbery with which a minor between sixteen and eighteen years of age may be charged as if an adult by the United States Attorney. Subparagraph (C) refers to traffic offenses.

States, 354 U.S. 394, 77 S.Ct. 1332, 1 L. Ed.2d 1442 (1957), such a right of appeal has been repeatedly enlarged to the point where any rule of strict construction must give way at least to the point of recognizing that Congress intended this appeal to be taken. *See* the Boggs Act, 18 U.S.C. § 1404 (1956) (United States appeals of narcotics suppression orders); the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 3731 and D.C.Code 1969 Supp., § 23–105) (United States appeals of suppression orders generally and in the then District of Columbia courts). Now, by virtue of the 1970 Act, the District of Columbia is specifically included and there is no support for assuming that Congress intended to limit District of Columbia appeals of suppression orders to the types of minor offenses it prosecutes in the Criminal Division of the trial court. *See* United States v. Greely, *supra,* 134 U.S.App.D.C. at 197, 413 F.2d at 1104, discussing congressional intent "to allow the Government to bring successful prosecutions when the trial judge has erroneously suppressed evidence". Such, I believe, is the intent in the 1970 Act.

On the merits of this appeal I do not find it necessary to reach the Fourth Amendment issue. I agree that had there been a search of M. E. H. and a seizure of the weapon from him, it would have been proper. However, the fact is that the weapon was recovered from the floor where M. E. H. had abandoned it before any constitutional intrusion had occurred. In these circumstances, there was no search and seizure of which M. E. H. may complain. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2057, 36 L.Ed.2d 854 (1973), citing Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Smith v. United States, D.C.App., 292 A.2d

150 (1972); Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968).

REILLY, Chief Judge, also concurs in the result.

KERN, Associate Judge, with whom KELLY, Associate Judge, joins, dissenting:

The court's decision to entertain this concededly interlocutory appeal results from (1) its failure to apply the juvenile code the way Congress enacted it as a part of the District of Columbia Court Reform and Criminal Procedure Act of 1970[1] and (2) its refusal to recognize the long-standing distinction between criminal and juvenile proceedings first spelled out for this jurisdiction in comprehensive fashion by Judge Prettyman in Pee v. United States, 107 U.S.App.D.C. 47, 49–50, 274 F.2d 556, 558–559 (1959), and recently reaffirmed by this court. In re J. T., D.C.App., 290 A.2d 821 (1972).

We are required to start with the proposition enunciated by Mr. Justice Frankfurter concerning finality of an order or judgment as the absolute *prerequisite* to its appeal. He stated for the Supreme Court:

> The general principle of federal appellate jurisdiction . . . requires that review of *nisi prius* proceedings await their termination by final judgment. . . .
>
> . . . Congress has recognized the need of exceptions for interlocutory orders in certain types of proceedings where the damage of error unreviewed before the judgment is definitive and complete . . . has been deemed greater than the disruption caused by intermediate appeal. [DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962).]

*See* 9 J. Moore, Federal Practice § 110.06 (2d ed. 1973).

1. Pub.L.No.91–358, July 29, 1970, 84 Stat. 473, 522–543.

Since it is conceded that the suppression order in this case is *not* a final judgment, we must ascertain whether Congress has provided for appellate review of this kind of interlocutory order. It is undisputed that the new juvenile code (*i. e.*, Subchapter I of Chapter 23 of Title 16 of the D.C. Code) does not confer upon this court authority to review this particular interlocutory order.[2] Neither has Congress in the statute governing our general appellate jurisdiction vested in us the right to hear interlocutory appeals in juvenile proceedings.[3]

Where then does the majority find authority for our jurisdiction to entertain the government's interlocutory appeal in this case? Having found none in the carefully-drawn "juvenile code" enacted by Congress in 1970 to govern District of Columbia juvenile proceedings,[4] it turns to that part of our Code denominated "Criminal Procedure." Ignoring the multitude of decisions by this court, the federal circuit court, and the Supreme Court that a delinquency proceeding is not a criminal prosecution,[5] the majority seizes upon Section 23–104(a), clearly a criminal statute,[6] as being dispositive of the jurisdictional issue in this case. Section 104(a), contained in Title 23 which commences with a Section on "Conduct of Prosecutions" and

ends with a Section on "Place of Execution", reads in pertinent part:

> The . . . District of Columbia may appeal an order, *entered before the trial* of a person *charged with a criminal offense,* which suppresses evidence . . . if . . . the Corporation Counsel *conducting the prosecution* for such violation certifies . . . the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending *against the defendant.* (Emphasis added.)

The majority then adopts the following syllogism: The petition filed in the Family Division in this case alleges the juvenile is a "delinquent child";

a "delinquent child" is defined in D.C. Code 1973, § 16–2301 as a child who has "committed a delinquent act";

Section 16–2301 further defines a "delinquent act" as an act "designated as an offense under the law of the District of Columbia";

and, therefore, the juvenile in this case is "a person charged with a criminal offense", as provided by Section 23–104 and we may entertain this appeal.

But this approach ignores the fact that Section 104 expressly applies only to an order entered before "trial", whereas the or-

2. D.C.Code 1973, § 16–2327.

3. D.C.Code 1973, § 11–721(a)(2).

4. *See* Lawton, Juvenile Proceedings—The New Look, 20 Am.U.L.Rev. 342–43 (1970–71), which characterizes the chapter governing Family Division proceedings as "the first *complete* juvenile procedure code in the history of the District of Columbia . . . outlining with *precision* the procedures to be followed in the *post-Gault* era." (Emphasis added.)

5. The mere fact that a juvenile in a *delinquency* hearing is afforded the same constitutional protection against an unreasonable search and seizure as a criminal defendant does not transmogrify his juvenile proceeding into a criminal proceeding so as now to entitle us to invoke

the *criminal* provisions of Section 23–104(a)(1) for a Family Division proceeding. McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); In re Winship, 397 U.S. 358, 366–367, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 21, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967).

6. The Department of Justice witness sponsoring its enactment by Congress as a part of the Court Reform and Criminal Procedure Act of 1970 explained that it was to provide "a comprehensive format for appeal by the prosecution in a *criminal* case." (Emphasis added.) *See* Hearings on H.R.13689 and H.R. 12854 Before Subcomm. No. 1 of the Comm. on the District of Columbia, 91st Cong., 1st Sess. 109 (1969).

der in the instant appeal was entered by the court before the "factfinding hearing". The "factfinding hearing" in a juvenile proceeding, as enacted by Congress in the 1970 Act under which the instant case was brought, is a term of art which Congress (a) has defined as "a hearing to determine whether the allegations of a petition [of delinquency] are true" and (b) has provided may be conducted differently than the trial of an adult.[7] Given the fact that Congress has specifically differentiated between a "trial" and a "factfinding hearing", we cannot read the one term as synonymous with the other.

Also, under any accepted principle of statutory construction, Section 104 could not be read as applicable to the *juvenile* proceeding in this case because appellee is *not* "charged with a criminal offense", In re Coward, D.C.App., 254 A.2d 730, 732 (1969), remanded on other grounds, 139 U.S.App.D.C. 30, 429 F.2d 214 (1970); the Corporation Counsel in this delinquency proceeding is *not* "conducting" a "prosecution", D.C.Code 1973, § 16–2305(f); and, appellee is *not* "the defendant", Pee v. United States, *supra,* 107 U.S.App.D.C. at 49, 274 F.2d 556.

Apparently realizing that its manner of construing Section 104 is contrary to the way that Section is written and elides the long-standing distinction between juvenile and criminal cases, the majority invokes the rubbery concepts of "fundamental fairness" and "beneficent purposes" to support its conclusion that we have jurisdiction of this appeal.[8] But no principle is more

crystal clear than that an appellate court may hear appeals from non-final orders, as is the order in the instant appeal, only if the legislature has expressly conferred jurisdiction to hear such an interlocutory appeal. Since Congress has not granted us authority to review this particular kind of interlocutory order in a juvenile proceeding any considerations of fairness and good purpose are of course beside the point.

It is true that the government in this case spins forth an alluring "public policy" argument that it should have the right to appeal from suppression orders in juvenile cases else dozens of delinquents charged with serious crimes will somehow escape unscathed from the toils of the law.[9] This is good advocacy but wholly irrelevant to the issue of jurisdiction presented by this appeal. Historically, prosecutors made the same argument with respect to criminal suppression orders, which were formerly not reviewable on appeal, but the Supreme Court pointed out that it was for the legislature to grant the relief prosecutors sought. *See* Di Bella v. United States, *supra,* 369 U.S. at 130–131, 82 S.Ct. 654, 7 L.Ed.2d 614.

However desirable it may appear from a "public policy" standpoint for the court to remedy the omission by Congress from the 1970 Act and to confer upon the government the right to appeal from suppression orders in juvenile cases, it is up to Congress, not this court, to remedy the disadvantage resulting from the statutory void

---

7. *See* D.C.Code 1973, § 16–2301(16) and §§ 16–2316 to 16–2317.

8. The majority says (at p. 563):
    We cannot conceive that it would be fundamentally unfair to allow the District to challenge an order entered prehearing, which suppresses evidence in a juvenile delinquency proceeding. Nor can we conceive that any beneficent purposes of the Juvenile Court Act will be defeated by such an appeal.

9. Appellant's Supplemental Memorandum, pp. 11–12, refers to astronomical increases in aggravated assault, robbery and burglary allegedly committed by persons over 16 years of age. Fortunately Congress recognized and provided for in the new juvenile code the right of the government to transfer juveniles to the Criminal Division for *criminal prosecution.* D.C.Code 1973, § 16–2307. As we have seen above, the government pursuant to Section 104 has the right to appeal from pretrial suppression orders in criminal prosecutions.

about which the government now complains. As Judge Tamm of the Circuit Court here so recently reminded us:

> [I]n supplanting congressional objectives with our own purposes and objectives, we are usurping a power which does not belong to us. For judges to think otherwise is not a mistake but a delusion. [Viola v. United States, 483 F.2d 1209 (D.C.Cir., dissenting opinion, June 13, 1973).]

Since I cannot join in the judicial activism the court today embraces, I respectfully dissent.