UNITED STATES, Appellant,

v.

William A. WALKER, Appellee.

No. 6147.

District of Columbia Court of Appeals.

Argued Feb. 22, 1972.

Decided Aug. 15, 1972.

slim and that he has been discharged from the hospital.

James F. McMullin, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and William M. Brodsky, Asst. U. S. Attys., were on the brief, for appellant.

Lawrence H. Schwartz, Washington, D. C., appointed by this court, with whom James S. Dawson, III, Washington, D. C., was on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

Holding that a pistol was the product of an illegal search and seizure, the trial court granted a pretrial motion to suppress. The Government has appealed.[1]

The evidence was that two uniformed police officers, sitting in a police car on a public street, were approached by a man about 35 years of age accompanied by a 9-year-old boy. This man told the officers there was a man named Willie sitting on the porch of a house in the 1400 block of Swann Street with a gun in his waistband. He described the man as wearing a black shirt and blue knit hat and having an artificial leg. The informant was unknown to the officers and refused to give his name, saying he "was afraid to be involved."

The officers drove to the 1400 block of Swann Street (a distance of about two blocks from where they received the information) and observed four men on the porch of 1420 Swann Street, an abandoned house. One of the group was wearing a blue knit hat and black shirt and appeared to be sleeping. The officers approached the group and one officer felt the legs of the sleeping man and determined the right leg was artificial. No weapon was then visible. The officer said "Willie, stand up, turn around, place your hands on the porch". The man complied and the officer ran his hand around the man's waistband and removed a loaded pistol from the right front waistband. The man (appellee) was arrested and charged with carrying a pistol without a license.[2]

■ In granting the motion to suppress the trial court laid stress on the fact that the officers acted on information given by a person who was unknown to them and whose name they did not obtain. Reference was made to our decision in United States v. Frye, D.C.App., 271 A.2d 788, 791 (1970), where we urged that police "where it is at all practicable" secure the name and address of "a citizen giving information on the street," and thus "go far to remove from subsequent prosecutions the troublesome factors of the unknown and unidentified and uncorroborated informant." However we did not hold that police should ignore information from an unknown and unidentified citizen. Here the officers attempted to obtain the citizen's name. When he refused to give his name the officers were not required to drop the

---

1. D.C.Code 1967, § 23–104(a) (Supp. V, 1972).

2. D.C.Code 1967, § 22–3204.

matter then and there; they were under a duty to investigate it.

When the officers went to 1420 Swann Street and saw a man dressed as described by the citizen they had a right to make an investigatory stop. When preliminary investigation revealed that the man had an artificial leg, the officers had a right to seek further information by questioning the man. Before questioning him they had the right under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to make a limited search or frisk to ascertain if he were armed. "Questions leading toward a frisk might have brought a shooting." Gaskins v. United States, D.C.App., 262 A.2d 810, 812 (1970). The officers were "amply justified in conducting a limited protective search for weapons." United States v. Dowling, D.C.App., 271 A.2d 406, 408 (1970). Any doubt, if such ever existed, as to the correctness of our holdings in the two cases cited,[3] has been removed by the recent holding of the Supreme Court in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (decided June 12, 1972).

It is true that in *Adams* the information was given by an informant who was known to the officer and who had previously given him information, while here the information came from one unknown to the officers. The credibility of a paid or professional informer may be suspect, but in our opinion the same cannot be said of a citizen reporting a crime.[4] While the citizen here did not specifically say he had seen the pistol in Willie's possession, such was the clear inference from his report.

The order of suppression is reversed.

---

3. In each case the officers acted on information given by an unidentified citizen.

4. *See* Daniels v. United States, 129 U.S. App.D.C. 250, 252, 393 F.2d 359, 361 (1968); United States v. Bell, 457 F.2d 1231, 1239 (5th Cir. 1972).