**Charles H. GALLOWAY, Appellant,**

v.

**UNITED STATES, Appellee.**
**No. 6951.**

District of Columbia Court of Appeals.

Argued Sept. 13, 1973.

Decided Oct. 17, 1974.

Rehearing and Rehearing en Banc
Denied Dec. 12, 1974.

Carol Garfiel Freeman, Washington, D. C., appointed by this court, for appellant.

William M. Brodsky, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and James M. Hanny, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellant asks us to overturn his conviction for carrying a pistol without a license for which he was sentenced to pay a $100 fine or serve sixty days in jail upon the grounds that the police had (1) no probable cause to search and seize the gun from the auto he was driving on the night they stopped him and (2) no justification under the circumstances of this stop to seize the pistol from the auto as a protective "frisk" authorized by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968).

■ We have no occasion to reach the government's assertion that a *Terry* frisk was justified here because we believe the particular circumstances gave the officer probable cause to search the car, *see* Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970), and therefore the seizure of the pistol was proper.

The arresting officer who recovered the pistol was the government's *sole* witness at both the pretrial hearing on appellant's motion to suppress and at trial. He testified that while on duty in his police cruiser he received over his radio a "flash lookout" for an auto of a specifically described make, color and license tag, proceeding in a certain direction containing two people with a pistol. The radio flash (1) identified by name and assignment the police officer (Tr. II at 6) who had "just been advised of this fact [occupants of the car had a gun] by a citizen" (Tr. I at 4, 7), and (2) advised that that particular officer, after receiving the information from the citizen, had seen this car and verified both its description and the number of its occupants. (Tr. I at 6.) Within twenty minutes, the officer receiving the lookout

saw the car and, after calling for assistance, stopped it. Having found no pistol as a result of his frisk of the two men who had been riding inside it, he reached under the driver's seat of the car and discovered it there.

■ Appellant argues vigorously (Br. at 7) that the "report of a non-violent crime by an unidentified citizen" simply does not constitute probable cause upon which the "receiving" officer could have lawfully searched the car in this case. We disagree since "[i]t is enough that the police officer *initiating the chain of communication* either had firsthand knowledge or received his information from some person —normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth." Daniels v. United States, 129 U.S.App.D.C. 250, 252, 393 F.2d 359, 361 (1968). (Emphasis added.) *See* Carter v. United States, D.C.App., 244 A.2d 483 (1968).[1] This conclusion is consistent with the requirements established by the Supreme Court that to find probable cause on the basis of information received from an unknown informant there must be some showing of (1) the factual basis upon which that informant concluded a crime had been committed, and (2) the informant's veracity or the reliability of his information. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *see* Note, Probable Cause and the First-Time Informer, 43 U.Colo.L.Rev. 357, 359-60 (1972). An informant who is an eyewitness to or a victim of the crime he subsequently reports satisfies these requirements. United States v. Evans, 447, F.2d 129, 132 (8th Cir.), cert. denied, 404 U.S. 1047, 92 S.Ct. 727, 30 L.Ed.2d 735 (1971); McCreary v. Sigler, 406 F.2d 1264, 1269 (8th Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969), and, *see*

United States v. Bell, 457 F.2d 1231, 1238–1239 (5th Cir. 1972); Schmidt v. State, 17 Md.App. 492, 302 A.2d 714, 716 (1973).

In the instant case, the named officer "initiating the chain of communication" received the report of a pistol inside a certain car travelling in a certain direction from a citizen. He immediately confirmed that report by his own observation to the extent of verifying the existence of the car, its make, color and tags, and the number of its occupants. We believe that since the citizen's report here was of a rapidly moving street occurrence, rather than an informant's tip about a future criminal transaction, *see, e. g.,* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959) and United States v. Thornton, 147 U.S.App.D.C. 114, 454 F.2d 957 (1971), or an informant's relay of rumor or hearsay information, *see, e. g.,* Aguilar v. Texas, *supra,* it is reasonable to conclude that such report resulted from an eyewitness observation by that citizen. *See* District of Columbia v. M.E.H., D.C. App., 312 A.2d 561, 564–565 (1973); United States v. Walker, D.C.App., 294 A.2d 376, 378 (1972); Gaskins v. United States, D.C. App., 262 A.2d 810, 811 (1970). Accordingly, the officer receiving the look-out had probable cause under the facts and circumstances of this case, as measured by Chambers v. Maroney, *supra,* to stop and search the car for the pistol.

■ We are constrained to comment in upholding the search here that in the future (1) the police should secure the name and address of a citizen giving information concerning a crime to a police officer, *see* United States v. Frye, D.C.App., 271 A.2d 788, 791 (1970), and (2) the government, if at all possible, should present as a witness that particular officer to whom the citizen complains since his testimony is obviously relevant and material in establishing that the complainant was an eyewitness or vic-

---

1. The officer who conducted the search cannot insulate his action from constitutional challenge by pleading that he merely was acting on information contained in a radio bulletin. Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

tim. *See* United States v. Walker, *supra*; District of Columbia v. M.E.H., *supra*.

Affirmed.

GALLAGHER, Associate Judge (dissenting):

I agree with the majority that probable cause to search in this case rests on the reliability of the person supplying the police with the information about the gun in the car. As to this factor, when asked concerning the basis of the citizen's statement that appellant possessed a weapon the only government witness, the arresting officer (not the officer who talked to the citizen) candidly replied "I don't know." Consequently, the record is devoid of any information on whether the reporting citizen actually had adequate information that appellant possessed the gun. The majority opinion necessarily merely assumes the citizen had seen the gun.

This is not, of course, to say that an officer who receives a radio run should explore the basis for the request that he pursue a car. That would be most impracticable. His duty is to obey immediately the instructions given. Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971). But, on the other hand, in response to a motion to suppress in a case such as this the government must stand ready to establish that the information given by a citizen in the first instance is sufficient to establish probable cause for an arrest or search.[1]

I also agree with the majority that the government should, if at all possible, present as a witness "that particular officer to whom the citizen complains since his testimony is obviously relevant and material in establishing that the complainant was an eyewitness or victim." I would go further, however, and say that the officer to whom the citizen complains, or the citizen, may at times, as here, be the *only* witness who can supply the information necessary to support an arrest or search. My main disagreement with the majority is that I consider the serious lack of information here requires a reversal. The majority opinion by simply assuming that the required information existed concludes that it was unnecessary to produce the testimony at the hearing. I do not agree that such assumption in place of evidence may be indulged.

This may be a good opportunity to relate what I have been observing recurringly in motion to suppress hearings. More often than not, those hearings involve suppression of weapons or narcotics (contraband). Where this is the case, the suppression hearing usually casts the die one way or the other for the defendant. In most cases, whichever side prevails at the hearing prevails ultimately. Guilty pleas or stipulations on the facts commonly result where motions to suppress are denied. Yet, I find—as I found here—that the government all too often does not put its best testimonial foot forward at the hearing to establish the validity of the arrest or search. Not only is the suppression hearing the means by which the government establishes that the arrest or search was valid under the Constitution but, as I have said, the hearing in this type of case is frequently the "main show" in the case. For these reasons, the government should present the more probative testimony in its possession in order to support the arrest, this was not done here but, instead, the least informed witness was presented.

In this case, the government asserted in its written opposition to the motion to suppress the gun that the informant "was a private citizen who had seen the gun." Yet, it presented no witness who could establish this. Presumably, the reporting officer or citizen would have so testified if *either* had been called as a witness. If so, this appeal may well have resulted in a

---

1. As the majority opinion states, we are not here discussing the basis for a *Terry* stop and frisk but, rather, a search of the car.

routine affirmance instead of a divided opinion on the validity of the arrest. So far as the record discloses, it would have been a simple matter to support the search and seizure. Since in my view the search was not supported, I dissent.

It may be this case will serve as an example of the unnecessary litigation which arises when the government neglects to offer at a suppression hearing the more probative testimony, rather than the least probative,[2] to support the validity of an arrest or search. A policy of producing witnesses in a position to effectively support the arrest[3] will result in an enhanced law enforcement effort and, consequently, will be in the public interest.

2. Here, it appears likely that either the reporting officer or the citizen may have been adequate.

3. As I have indicated, the only government witness presented was in no position to answer what I view as the critical question and consequently replied "I don't know."