**UNITED STATES, Appellant,**

v.

**Frederick R. COUSAR and Will Miller, Jr., Appellees.**

**No. 9305.**

District of Columbia Court of Appeals.

Argued Aug. 14, 1975.

Decided Dec. 18, 1975.

Bernard J. Panetta, II, Asst. U.S. Atty., with whom Earl J. Silbert, U.S. Atty., John A. Terry, James F. McMullin and David R. Addis, Asst. U.S. Attys., were on the brief, for appellant.

Richard Whittington Whitlock, Washington, D.C., appointed by this court, for appellee Cousar. Bernard W. Kemp, Washington, D.C., appointed by this court for appellee Miller, adopted the brief and argument of Mr. Whitlock.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

This prosecution appeal[1] arises from an order of suppression of evidence in favor of defendant-appellees Frederick R. Cousar and Will Miller, Jr. The case presents the question whether the stopping of the accused and the continuing inquiry were justified such that the discovery of the weapon in plain view on the floor of Cousar's car was not tainted by unreasonable and thus unconstitutional action by the state. We hold that the stopping of the automobile in question was reasonable, and, accordingly, we reverse.

▮ On the afternoon of January 10, 1975, Officer Ronald Harvey heard a broadcast over his radio that the driver of a black and maroon Monte Carlo with reflectors down the door sill had been seen loading a forty-five automatic revolver and putting it into his waistband. During the hour that passed between the broadcast and

I. D.C.Code 1973, § 23–104.

the arrest, Officer Harvey did not see another car in that vicinity matching the description he had heard. When he saw such a car in the same general area, he stopped it and Cousar, the driver, got out. Officer Harvey patted him down for the automatic, and at this point Cousar volunteered that the policeman must be looking for his (Cousar's) toy gun, which was in the trunk of the car. Cousar surrendered his trunk key to Officer Harvey, who opened the trunk and found a replica of a "forty-four" caliber pistol. While Officer Harvey was looking in the trunk, Officer John Monno, having heard that a car was being stopped for possible possession of weapons, arrived. As he was walking past the open driver's door, he saw what appeared to him to be a pistol and ammunition lying in front of the driver's seat. He seized the pistol, and Cousar and his passenger, Miller, were placed under arrest.

The government correctly contends that the stop of the Cousar automobile was reasonable. It should be noted that there is no contest over the subsequent seizure of the pistol and ammunition. The parties agree that if the stop was reasonable, the seizure of the pistol in plain view was proper.

The initial seizure of the accused is valid because it is based on information justifying an investigative stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Thomas*, D.C. App., 314 A.2d 464 (1974); *cf. Bates v. United States*, D.C.App., 327 A.2d 542 (1974) and *Galloway v. United States*, D. C.App., 326 A.2d 803 (1974) (same holding although based on probable cause). The officer's stopping of the Cousar car was proper where the officer had received a detailed description of the car, its occupants, and its location. The Supreme Court observed in *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d

612 (1972), that while some information might not have sufficed for an arrest or a warrant, it was enough to justify further investigation entailing a stop of one reasonably subject to that investigation. The fact that the information came from an unknown or unidentified citizen does not preclude the police from acting. *Galloway v. United States, supra; District of Columbia v. M. E. H.*, D.C.App., 312 A.2d 561, 565 (1973), citing *United States v. Walker*, D.C.App., 294 A.2d 376 (1972). For purposes of determining reasonableness of a momentary seizure to investigate, we preceive no substantial difference between the first-hand report given the arresting officer in *M.E.H.* and the transmission of that report through the receiving officer and the police communication system. In either event the police must act promptly on information supplied. This is particularly so where, with the kind of detailed description of the unique automobile, there is even less possibility of an error through transmission.

The appellees contend that the information came from an anonymous telephone caller, but can point to no testimonial support to substantiate this assertion.[2] Officer Harvey testified that the information was given by a citizen to a radio unit on patrol and that the unit then broadcast the information.

The continued detention of Cousar to the point where the second officer saw the gun through the open car door was justified by the escalation of events. When Cousar volunteered that he had a toy gun in the trunk, it was reasonable for the officer to seek to resolve the possible conflict between the report of the citizen an hour earlier and the assertion that the gun was not a real one. Therefore, we hold that as to Cousar's right to be free from unreasonable seizure of his person no violation

2. It is true that in a prehearing opposition to the suppression motion the government alluded to a report by telephone. However, that is not the testimony given at the hearing, and we are bound by that part of the record. D.C.Code 1973, § 17–305(a).

thereof occurred at the time the gun was observed.

The order on review is reversed and the case remanded for further proceedings.

*So ordered.*

KERN, Associate Judge (concurring):

While I concur in the result reached by the court, I add the following comment. The issue raised by this appeal is as troublesome as it is familiar: What is the proper decision to be made when, at the pretrial hearing of a motion to suppress a contraband item, the government fails to produce the particular police officer who received certain information from an *unidentified* person and then upon the basis of that information initiated "the chain of communication" which ultimately impelled the "receiving" officer to intrude upon a citizen within the meaning and protection of the Fourth Amendment. *See Galloway v. United States*, D.C.App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

Briefly stated, Officer Harvey was on duty when he heard over his cruiser radio the broadcast "of a black [and] maroon Mont carlo [sic] with reflectors down the door sill. The driver of which had been seen loading a forty-five automatic revolver, put it into his waistband and get back into the car and drive off." An hour later Officer Harvey observed a car of that description driven by appellee Cousar and he stopped it. Officer Monno[1] arrived on the scene immediately thereafter, saw the pistol in the car in plain view and entered the car and took it. If the initial stop was

valid then the seizure of the pistol under these circumstances was lawful. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Ker v. California*, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The propriety of the stop effected by Officer Harvey turns of course on hearsay evidence, and the test is whether the officer sending the information concerning a man with a gun in the car either had (a) observed himself the alleged criminal activity or (b) received word of it from someone with first-hand knowledge who was generally "credible" or on this particular occasion "reliable". *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed. 2d 306(1971); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Galloway v. United States, supra.* Unfortunately, that officer did not appear to testify as to the circumstances of his receipt of the information, and Officer Harvey was unable even to identify him.[2]

Officer Harvey did testify that the information was given "by just a citizen" to a police officer on patrol who then broadcast it;[3] *but,* five days before the officer so testified the prosecutor had asserted in writing in opposition to the suppression motion that "an unidentified caller" had informed the Metropolitan Police Department that a man had been seen loading a pistol, putting it into a car and driving away. The difference between a *citizen* reporting information of criminal activity in progress to a police officer on the beat and an *unidentified caller* telephoning the Police Department that someone "had been seen" doing something illegal is significant.

---

1. He expressly conceded he had not heard the radio call which impelled Officer Harvey to stop appellee's car.

2. In response to the trial judge's assertion that "the Government has ample time to find out who that officer is and bring him in", the prosecutor protested, "That is not a simple procedure" and "to try to put these situations together sometimes two or three weeks after the event can be very difficult." The experienced trial judge suggested "the

police dispatcher would know" and the prosecutor did not disagree.

3. Officer Harvey's testimony concerning the origin of the report was given only after the trial court raised the point *sua sponte* and the prosecutor *then recalled* him to the stand. With deference I think the government did not understand its obligation in this case and bore its burden of proof more by accident than by design. I hope a word to the wise is sufficient.

*See Adams v. Willams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Whiteley v. Warden, supra.*

The trial judge, upon consideration of all the circumstances in the instant case, found that "there is not sufficient showing of the reliability of the informant to even make out a lesser degree of probable cause" and suppressed the pistol. Given the state of this record such a conclusion is far from fanciful.[4]

My analysis of the case proceeds upon the premise that the prosecutor's pleading is evidence only of inadequate trial preparation and does not reflect what in fact occurred; and I credit, therefore, the live testimony of the officer.[5] Accordingly, the original source of the information, which ultimately reached Officer Harvey, was a citizen rather than an unidentified caller. It seems clearly established that the citizen-informer, as distinguished from an informant in the criminal milieu, has credibility. *See* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L. Rev. 741, 765–73 (1974).[6]

Thus, one prong of the test enunciated by the Supreme Court for the use of hearsay evidence in establishing probable cause is established, *viz.,* the credibility of the informer.[7] However, even the citizen-informer must under applicable Supreme Court decisions still meet the so-called basis of knowledge prong of the

*Aguilar* test, *viz.,* explicate how he obtained the information he passed on to the Officer. *See Aguilar v. Texas, supra.* In the absence of both the officer and the citizen it is obviously difficult for the trial judge and this court on this record to know if the latter recounted to the former observations he himself had made or was merely circulating rumor. Since the officer's testimony did not indicate whether the informing citizen himself had seen the packing of the pistol by appellee Cousar, how then can we determine that the citizen himself had direct evidence of appellee's carrying the pistol? In answering this question, we have some guidance from the Supreme Court in *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d (1969):

> In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

Mr. Justice White, concurring in *Spinelli,* put the point quite clearly (at 425, 89 S.Ct. at 593):

> I am inclined to agree with the majority that there are limited special circum-

4. The government in the exuberance of advocacy chides the trial court in its brief: "[T]he trial court by its decision would have police ignore reports from unidentified citizens."
   A reading of the entire record suggests that by its decision the trial court would *not* have the government ignore its responsibility to demonstrate by material and relevant evidence at the suppression hearing the propriety of the police action.

5. The government's brief does not assist me in reaching this conclusion since it chooses to refer to facts stated in the Opposition favorable to its case, but ignores the patent inconsistency between another part of the Opposition and Officer Harvey's testimony.

6. The author is an Associate Judge of the Maryland Court of Special Appeals. His article is a comprehensive examination of handling hearsay in a probable cause setting.

7. The Court stated in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed. 2d 723 (1964):
   [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was "credible" or his information "reliable." [Citation and footnote omitted.] [Emphasis added.]

stances in which an "honest" informant's report, *if sufficiently detailed,* will in effect verify itself—that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way. . . . Detailed information may sometimes imply that the informant himself has observed the facts. . . . [Emphasis added.]

Thus, the key question becomes: Was the information given by the citizen to the transmitting officer sufficiently detailed to permit the reasonable inference that he had gained this information in a reliable way? I note the description contained in the radio broadcast were detailed as to (1) the make, model, color and distinctive accessories of the car, (2) the caliber of the pistol and its handling and positioning on the carrier's person, and (3) the latter's entry into and departure in the car. While the question in my view is extremely close I conclude on balance that the broadcast was sufficiently detailed to permit the inference that the citizen came about his information in a reliable way.[8] Accordingly, I vote to reverse.

---

8. Since we are dealing with a *Terry* stop of the auto, the government need only point to facts justifying a "reasonable suspicion" rather than the more stringent probable cause needed to make a full-blown arrest and search. *Terry v. Ohio,* 392 U.S. 1, 24–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; *see United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).