**Percy W. LAWSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10135.**

District of Columbia Court of Appeals.

Argued May 1, 1976.

Decided July 16, 1976.

1. D.C.Code 1973, § 22–3204.

2. A transcript of the telephone conversation was introduced in evidence at the suppression hearing. The text reads as follows:
 Dispatcher (D.): Police Communications, Off. Cesaro . . . May I help you?

Richard W. Whitlock, Washington, D. C., appointed by this court, for appellant.

William J. O'Malley, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

PER CURIAM:

Appellant was convicted of carrying a pistol without a license.[1] He appeals the denial of his motion to suppress the weapon. We affirm.

Appellant was apprehended some three minutes after an unidentified telephone caller informed the police that a man at a telephone booth at the corner of Third and P Streets, N.W., was carrying a pistol in his pants pocket. The caller described the man as wearing blue jeans and having a grey beard. The caller refused to give his name when asked by the dispatcher.[2]

 Caller (C.): (Male voice) Yeah, is this #1?
 D.: No, you want Number one Precinct?
 C.: Yeah.
 D.: Is there anything that I can help you with—what's the problem?
 C.: Yeah . . . wait a minute, I am going to tell you what's wrong . . .

After receiving the radio run, the investigating officers drove promptly to the corner of Third and P Streets where they observed a man in the telephone booth (the appellant), who matched the description given in the radio run. No other people were visible in the area. No weapon was visible on appellant but when the officers approached him he made motions which one of the investigating officers described as looking "as though he was trying to hide something." The police conducted a frisk and discovered a pistol in appellant's right-front trouser pocket.

Appellant argues that the stop and subsequent frisk were impermissible because the police were acting on information supplied by an unknown and unidentified informant. We disagree.

Our decision in *United States v. Walker,* D.C.App., 294 A.2d 376 (1972), is on point. In that case, the arresting officer was approached on the street by an unknown man who informed the officers that a man named "Willie" was sitting on a porch in a certain block on a named street and was carrying a pistol in the waistband of his trousers. The informant refused to give his name. The police responded to the

street and block identified and found a man meeting the informant's description asleep on a porch. A weapon was not visible but, as in the instant case, was discovered in the frisk conducted by the investigating officers. We said there in reversing the trial court's suppression of the weapon:

However [in *United States v. Frye,* D.C.App., 271 A.2d 788 (1970)] we did not hold that police should ignore information from an unknown and unidentified citizen. Here the officers attempted to obtain the citizen's name. When he refused to give his name the officers were not required to drop the matter then and there; they were under a duty to investigate it.

. . . . . .

It is true that in [*Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)] the information was given by an informant who was known to the officer and who had previously given him information, while here the information came from one unknown to the officers. The credibility of a paid or professional informer may be suspect, but in our opinion the same cannot be said of a

---

it's a guy on the corner of Third and Pea St. N.W., around the corner of 3rd and Pea St. N.W. at the telephone booth, got on dungarees and he's got a mustache, he is around there with a pistol in his pocket.

D.: You say a Green Mustang?

C.: No, I say he's got a green mustache!!

D.: A green mustache?????

C.: Uh, huh, you know, grey hair under his chin.

D.: Grey hair . . . . . .

C.: Uh huh.

D.: And a grey mustache?

C.: Uh huh, and he's got on a pair of blue jeans and he is in the telephone booth on the corner of Third and Pea St. N.W.

D.: That is Third and P-as-in-Paul?

C.: Yeah, that's Northwest at the phone booth.

D.: And you say he has a grey mustache and a grey beard?

C.: Uh huh and a pair of blue jeans on.

D.: What color is his shirt?

C.: Yeah.

D.: How old is he—about thirty or forty?

C.: I don't know how his age is . . . something like that, but he got a long mustache under his chin and a pair of blue jeans on . . . I don't know what the color of his shirt is.

D.: What is your name sir?

C.: I don't give you my name now.

D.: Okay, we'll check it out.

C.: Alright, you better check it out right quick now!

D.: Okay, we are.

C.: He's in the telephone booth around there!

(Call terminated at 19:09:03 hours.)

The text of the radio run was not introduced in evidence during the hearing on appellant's motion to suppress. However, one of the arresting officers testified that the information contained in the radio run was substantially the same as that contained in the transcript of the telephone conversation.

citizen reporting a crime. While the citizen here did not specifically say he had seen the pistol in Willie's possession, such was the clear inference from his report. [*United States v. Walker, supra* at 377–78 (footnote omitted).] [3]

 Appellant would distinguish *Walker* on the ground that in the instant case the initial report was received over the telephone. Although there may be cause to make that distinction in some circumstances, on the record here the investigating officers were not compelled to stand by idly solely because the information did not come from a person appearing personally before a member of the police department. *Murphy v. United States*, D.C.App., 293 A.2d 849 (1972); *Carter v. United States*, D.C.App., 244 A.2d 483 (1968). The report of an eyewitness is sufficient to provide the basis for further police investigation whether or not the witness is willing to identify himself. *Galloway v. United States*, D.C.App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Murphy v. United States, supra; Carter v. United States, supra*. Moreover, the facts of this case, and the inferences to be drawn therefrom, persuade us of the reliability of information which is, after all, the factor by which the reasonableness of the officer's conduct is constitutionally measured. In the circumstances here, such reliability is not diminished by appellant's characterization of the informant as an "unknown tipster." This report was by all appearances that of a person who, almost contemporaneously, had personally observed the occurrence he was describing. He told the officer taking the call, "you better check it out right quick now. . . . He's in the telephone booth around there." His hurried description, his apparent unfamiliarity

with appellant's name or age, his insistence on immediate police action, all suggest to us the report of a citizen-informer who had observed firsthand the criminal possession of a pistol. *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Cousar*, D.C.App., 349 A.2d 454 (1975). Reliability was established when the police just minutes later reached the street corner, and found that the scene corroborated the informant's report in all respects. Further, the appellant responded to their presence in a manner which was consistent with one who possessed a concealed weapon. Under these circumstances an investigatory stop was reasonable. It follows that the police could properly conduct a limited search for weapons for their own protection since they had reason to fear, from the informant's report and their own observation, that the appellant was carrying a firearm on his person. *Adams v. Williams, supra; Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Walker, supra; Gaskins v. United States*, D.C.App., 262 A.2d 810 (1970).

To hold the stop impermissible would prohibit the police from acting upon such reports of serious crime except where a citizen eyewitness identifies himself or, if he desires to remain anonymous, personally seeks out a police cruiser or presents himself at the precinct house to make his report. The opportunity for investigation might well evaporate in the delay.

The text of the informant's telephone conversation as admitted into evidence at the suppression hearing was not such as to cause the dispatcher to have doubts as to the reliability of the information. Reluctance to reveal identity is not altogether

3. *See also United States v. Cousar*, D.C.App., 349 A.2d 454 (1975); *Galloway v. United United States*, D.C.App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *District of Columbia v. M.E.H.*, D.C.App., 312 A.2d 561 (1973); *Murphy v. United States*, D.C.App., 293 A.2d 849 (1972); *Green v. United States*, D.C.App., 275 A.2d 555 (1971); *United States v. Frye, supra; Carter v. United States*, D.C.App., 244 A.2d 483 (1968).

dispositive where the facts suggest that a citizen informant is personally conveying information which is substantially verified when the police arrive at the scene.

The judgment of conviction is

*Affirmed.*