James M. **MITCHELL**, Appellant,

v.

**UNITED STATES, Appellee.**

No. 10585.

District of Columbia Court of Appeals.

Submitted Sept. 15, 1976.

Decided Jan. 19, 1977.

John J. Stanton, Washington, D. C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry and Robert Fabrikant, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

PER CURIAM:

Appellant was convicted after a nonjury trial of possessing Preludin (phenmetrazine) in violation of D.C.Code 1973, § 33–702(2)(4). This appeal presents two issues: (1) did the arresting officer have

probable cause to arrest appellant when her information was received from a police lieutenant who had received his information from a "realiable source" who was not identified to the arresting officer; and (2) did the trial court improperly base its denial of appellant's motion to suppress as hearsay evidence the arresting officer's testimony based upon a police department report of the incident completed by her partner.

On August 19, 1975, Lt. Sefton of the D.C. Third District Vice Unit instructed the arresting officer (Officer Scott) and her partner to meet him near a specific northwest address. Lt. Sefton told both officers that he had received information from a "reliable source"[1] that two men were sitting in front of the house at that address; one man named James, later identified as appellant, was reported by the source as "actually engaged in selling narcotics in that area, and that he had in his pants pocket some narcotics." The lieutenant further reported that his source said the other man (named Jimmy) had a revolver in his right, front pants pocket; this individual was reported to be appellant's bodyguard. Full, detailed descriptions of the two men were relayed by the lieutenant to the arresting officer and her partner.[2]

Officer Scott and her partner then went to the house at the northwest address where they saw two men who matched the descriptions relayed by the lieutenant. As she walked toward the men, Officer Scott noticed a "large bulge" in the bodyguard's right, pants pocket. She so informed her partner who ran over to the man and "recovered a pistol out of his right, pants

---

1. The lieutenant told the officers that the source of his information "had proved reliable in five cases previously."

2. At the motion to suppress, the arresting officer was unable to recall all these details and read the details to the court from a police report about the case her partner had prepared. Appellant had been described to the lieutenant by the reliable source as "a Negro male, six two, 215, wearing a blue shirt, . . . carrying narcotics in his pocket, and . . . selling drugs." The bodyguard Jimmy was described by the source as "a Negro male, 45 years, five ten, two hundred pounds, stocky build, grey beard, wearing a purple T-shirt and brown pants, . . . carrying a pistol in his right, pants pocket, and . . . acting as a bodyguard for [appellant]."

pocket." Officer Scott then told appellant that she was a police officer, "asked him to stand [and] proceeded to pat his outside pants pocket." Although she did not feel any pills during the pat-down, she nevertheless reached into appellant's pocket and found two tablets which the lieutenant identified as Preludin. Appellant was arrested and subsequently convicted on the possession charge.

 Appellant's first contention is that the arresting officer did not have probable cause to arrest him. The probable cause standard for determining the legality of a warrantless arrest [as in the instant case] is the same as the standard required to secure a warrant. *Whiteley v. Warden*, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Spinelli v. United States*, 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Myers*, 538 F.2d 424, 425 (D.C.Cir.1976). When the information on which the arrest or warrant is based comes from an unidentified informant's tip, the probable cause standard to be applied is the two-pronged *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), test: (1) what were the underlying circumstances from which the informant concluded that criminal activity was underfoot and (2) what were the underlying circumstances from which the officer receiving the information concluded that his source was credible or the information reliable. *Id.* at 114,[3] 84 S.Ct. 1509.

In the absence of a statement detailing how the informant gathered his information, the tip may, if sufficiently detailed, verify itself; that is, the information provided may convince a reviewing court or an issuing magistrate that the informant is relying on something much more substantial than a circulating rumor or an individual's general reputation. *Spinelli v. United States, supra*, 393 U.S. at 416, 89 S.Ct. 584.

*See also id.* at 425, 89 S.Ct. 584 (White, J., concurring). The information provided by the informant in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), was cited with approval by the *Spinelli* court as sufficiently detailed to provide self-verification. 393 U.S. at 416–17, 79 S.Ct. 329. In addition, even if the information fails either prong of the *Aguilar* test, of if the information is not sufficiently detailed as to verify itself, it is still possible to find probable cause based on information gathered by the arresting officer. *Whiteley v. Warden, supra*, 401 U.S. at 567, 91 S.Ct. 1031. But that information acquired by the arresting officer must in some sense be corroborative of the informant's tip. *Id.*

We need not decide whether the information possessed by the lieutenant was sufficient to give probable cause to arrest appellant because the requisite probable cause can be found in two other sources. First, the information provided was sufficiently detailed, unlike *Aguilar,* that it verified the tip as more than a casual rumor or as only an account of appellant's general reputation. The clothes appellant and his bodyguard were wearing were described by the informant, a particular stressed both in *Draper* and *Spinelli*. The exact house address was given as were the names and physical characteristics of the pair. The contraband [narcotics for appellant; gun for the bodyguard] was described as being concealed, a fact most probably known only to someone with firsthand knowledge.

 Second, the arresting officer was able to corroborate the informant's foregoing information before appellant was arrested. In addition to finding two men on the steps at the northwest address as the informant related, both men appeared and were dressed in the manner described. But most importantly, the accuracy of the information was further established when

---

**3.** The bare conclusory allegation that the officer receiving the information knew his source to be reliable was expressly rejected in *Aguilar*. 378 U.S. at 114–15, 84 S.Ct. 1509.

the arresting officer noticed a bulge in the bodyguard's "right, pants pocket" and found there the pistol mentioned by the informant. The officers were clearly justified in making a *Terry* frisk, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), upon noticing the bulge, and in arresting both subjects upon finding the gun. We hold therefore that the arrest and the search incident to the arrest were valid. *United States v. Robinson*, 414 U.S. 218, 234–35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ A remaining point must be discussed: Was the government obligated at the suppression hearing to call as a witness the lieutenant who had firsthand knowledge of his informant's tip? In *Galloway v. United States*, D.C.App., 326 A.2d 803, 805 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), we admonished that

> the government, if at all possible, should present as a witness that particular officer to whom the citizen [informant] complains since his testimony is obviously relevant and material in establishing that the complainant was an eyewitness or victim.

*See also United States v. Cousar*, D.C. App., 349 A.2d 454, 456–58 (1975) (Kern, J., concurring). Failing to produce the lieutenant, however, in the instant case to testify about his informant's reliability was not reversible error in that probable cause was otherwise shown.

Appellant's second contention is that the details of the informant's information were presented to the judge in impermissible hearsay form, namely by the arresting officer reading her partner's report. Appellant's primary objection appears to be that the arresting officer did not personally prepare the report. Appellant is in error both in asserting that a document used for "past recollection recorded" purposes is inadmissible hearsay evidence, and in asserting that the report had to be prepared by the person whose past memory it records.[4]

■ Four elements must be met before a "past memory recorded" report is properly introduced [McCormick on Evidence § 299, at 712 (2d ed. 1972)]:

"(1) the witness must have had firsthand knowledge of the event" (in the instant case, the arresting officer testified that "at that time [just prior to the arrest], he [the lieutenant] described each of the subjects to [her]");

"(2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it" (here, the arresting officer testified that the report was prepared the same day as the arrest and that she knew the details told her by the lieutenant on that day);

4. McCormick states that classifying "past memory recorded" as a hearsay exception is logical given the limited and peculiar "unavailability" required for its use, that is, some lack of memory by the witness. On the other hand, the reliability of the past record rests on the veracity of the witness now testifying and who was present and witnessed the occurrence which her partner recorded. Thus it has also been argued that the past record is not properly a hearsay/hearsay exception problem. McCormick on Evidence § 299, at 713 (2d ed. 1972). In *Cohen v. Berry*, D.C. App., 188 A.2d 302, 304 (1963), the court held that the "past memory recorded" report "is received as a substitute for present memory and is offered for the truth of its contents." Thus it would seem the reports in the District fall under the hearsay exception theory. The Federal Rules of Evidence also classify past memory recorded as a hearsay exception (Rule 803(5)):

> (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

"(3) the witness must lack a present recollection of the event" (here, the arresting officer testified "I really don't recall the description" and "I can give you a partial description, but I wouldn't be completely sure of everything that I said.") ; and

"(4) the witness must vouch for the accuracy of the written memorandum" (here, the arresting officer testified that at the time the report was prepared, she read the report and it was a "true" reflection of the events on the day of the arrest).

■ These same criteria were discussed in *Cohen v. Berry*, D.C.App., 188 A.2d 302, 304 (1963), where the court specifically noted that "it is immaterial that [the witness] was not the person who actually recorded the information in the original notebook" so long as he adopted the information as his own. Thus in the instant case, the arresting officer's prior adoption of her partner's report, a report satisfying all the "past memory recorded" criteria, made the use of the report proper.[5]

■ In any event, we note that the Supreme Court in *United States v. Matlock*, 415 U.S. 164, 172–77, 94 S.Ct. 988, 39 L. Ed.2d 242 (1974), held that because the rules of evidence normally applicable in criminal trials do not operate with full force in suppression hearings before a judge, "reliable" hearsay generally would be admissible.

Accordingly the conviction is

*Affirmed.*

5. Appellant attempts to bolster his argument of improper admission of the report by showing that the judge did not admit the report into evidence. According to McCormick, admission of the report itself is more appropriately a concern at the jury stage of the trial, the danger being that the jury will give the report undue weight. *McCormick, supra* at 713 n. 8. The Federal Rules of Evidence mandate what the judge in the instant case in fact did; the report may be read into evidence but not received as an exhibit unless offered by an adverse

KERN, Associate Judge, concurring:

I agree with the result reached by the court and the general principles cited in support. It is undisputed that when an informant's tip is a necessary element in a finding that probable cause existed to arrest a suspect, the tip's proper weight is determined by measuring it against the standards articulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). If the tip is to be credited, the judge at the pretrial suppression hearing must be informed of (1) some of the underlying circumstances from which the informant concluded that appellant was selling narcotics, and (2) some of the underlying circumstances from which the police officer concluded that the informant was credible or his information reliable. *Aguilar v. Texas, supra* at 114, 84 S.Ct. 1509. This is the "two-pronged test" of *Aguilar*. *Spinelli v. United States*, 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It is agreed we must apply this test to the facts of this case. It is also agreed the informant's tip here initially failed to satisfy either prong of *Aguilar's* test. I feel that there may be some ambiguity in the majority opinion, however, as to the manner in which the deficiency in each prong was remedied. In an attempt to advance clarity in an area of the law which I feel has suffered from imprecision in expression and analysis, I would like to set forth briefly the approach which I believe follows from the principles of *Aguilar-Spinelli*.[1]

Since the government's sole witness at the hearing, Officer Scott, was unable to relate the manner in which the informant

party. Thus appellant's reference to the non-admission does not help his case at all.

1. My approach is largely that of Charles E. Moylan, Associate Judge of the Maryland Court of Special Appeals, in his article *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741 (1974). I also adopt Judge Moylan's terminology and will refer to *Aguilar's* prongs as the "basis of knowledge" prong and the "veracity" prong respectively. *Id.* at 747.

had obtained his information that appellant was "actually engaged in selling narcotics," the government initially failed to satisfy *Aguilar's* basis of knowledge prong. However, this deficiency may be remedied if the tip itself describes "the accused's criminal activity in sufficient detail that the . . . [court] may know that he [the informant] is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra* at 416–17, 89 S.Ct. at 589. As Mr. Justice White put it in his concurring opinion in *Spinelli* at 425, 89 S.Ct. at 593: "Detailed information may sometimes imply that the *informant himself* has observed the facts" (emphasis added). The tip was in such detail here as to the two men's physical characteristics, dress, location, activity, and the location of the contraband, that I am satisfied that it could be implied the informant himself observed the criminal activity thus satisfying *Aguilar's* first prong.

The government attempted to satisfy the veracity prong by showing that the informant had passed on accurate information to the police in the past. Officer Scott, however, was not familiar with the informant and could not testify concerning his "track record" with the police. And Lieutenant Sefton's statement, testified to by Officer Scott at the hearing, that the informant "had proved reliable in five cases previous-

ly," is the kind of conclusory assertion which the Supreme Court expressly rejected in *Aguilar v. Texas, supra*, 378 U.S. at 114–15, 84 S.Ct. 1509. There was, therefore, an initial failure by the government to meet *Aguilar's* veracity prong.

This deficiency may be remedied, however, by a showing that the informant's tip was corroborated in significant respects prior to the arrest. *Spinelli v. United States, supra; Whiteley v. Warden*, 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Here, Officer Scott testified that prior to appellant's arrest she observed the two men positioned in front of the specific house as the informant had said. But even more important, however, was the officer's discovery of a gun on the person of appellant's companion, described as appellant's "bodyguard," precisely where the informant's report said it was. Thus, before arresting appellant, the tip had been corroborated to an extent that it was reasonable to conclude that the informant was telling the truth in alleging that appellant was committing a crime. The initial deficiency with respect to the veracity prong was remedied thereby.

I agree therefore with the majority that *Aguilar's* standards for crediting the hearsay declaration of an informant were met. Accordingly, the trial judge could properly conclude that there was probable cause to arrest appellant.[2]

---

2. As the majority points out, this case presents a problem which has confronted us before, namely, whether the government can establish probable cause at a suppression hearing without the testimony of the police officer who has firsthand knowledge of the tip relied on in making the arrest. *See Galloway v. United States*, D.C.App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *United States v. Cousar*, D.C.App., 349 A.2d 454, 456 (1975) (Kern, J., concurring). More specifically, the government attempted to prove probable cause through testimony by Officer Scott as to what Lieutenant Sefton had told her the informant had said to *him*. This amounted to "double" hearsay. As indicated above, I conclude that the out-of-court declaration of the informant passes the *Aguilar-Spinelli* test and could be credited by

the judge at the suppression hearing. And although appellant does not specifically argue this point, I am inclined to believe that the *Aguilar-Spinelli* approach should similarly govern the question whether the out-of-court declaration of Lieutenant Sefton can be credited. Given the facts (a) that he personally conversed with the informant and (b) that he is a police officer, I would hold that his statement to Officer Scott as to what the informant said also would satisfy both prongs of *Aguilar*. *See* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer, supra* at 750 n. 47. *Compare United States v. King*, 335 F.Supp. 523 (S.D.Cal.1971), *modified*, 478 F.2d 494 (9th Cir.), *cert. denied*, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1973) and 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); and cases cited therein.