James R. GROVES, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1496.

District of Columbia Court of Appeals.

Argued Oct. 1, 1985.

Decided Feb. 5, 1986.

Scott D. Arnopol, Washington, D.C., appointed by this court, for appellant.

Nancy A. Luque, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and G. Paul Howes, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, MACK, Associate Judge, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Following a non-jury trial on stipulated facts, appellant was convicted of carrying a deadly weapon (a club), D.C.Code § 22–3204 (1981), and possession of a prohibited weapon (brass knuckles), *id.* § 22–3214. The sole issue in this appeal is whether the trial court erred in denying his pretrial motion to suppress the weapons. Appellant submits that the evidence was seized after an unlawful *Terry* stop [1] and was, therefore, inadmissible at trial. We disagree and affirm his convictions.

I

Evidence adduced at the hearing on appellant's motion to suppress revealed as follows: shortly before midnight on April 11, 1984, the police received a telephone call from a person who identified himself as Kenny Jackson, informing them that there was a man with a gun at 7th and S Streets, Northwest, in a 1975 pea-green Pontiac with a white vinyl top and "tags hanging over the gas tank." The informant stated that the man with the gun was by himself in the car.[2] A police dispatcher

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. A tape recording of the informant's conversation with the police was played at the suppres-

sion hearing, but was not designated as part of the record in this appeal. There appears to be no dispute, however, that the informant's tip was as we have detailed it thus far.

immediately broadcast an abbreviated version of the tip to police cruisers in the area, saying only that a man with a gun was at 7th and S Streets in a "white-over-green" Pontiac.

Officer Guy Poirier, the government's only witness at the suppression hearing, received the radio broadcast while patrolling near 13th and U Streets, Northwest, with his partner, Officer Herman, in their police cruiser. They proceeded to 7th and S Streets and, while in transit, conversed by radio with other officers who had been to the scene but had been unable to locate the identified "white-over-green" Pontiac. Poirier and Herman nevertheless proceeded to 7th and S Streets but, after a five to seven minute check, were also unable to locate the automobile.

Officers Poirier and Herman then received a second transmission from the dispatcher, this one having been directed to "the unit that was still on the scene at 7th and S." The dispatcher related that the informant was on the telephone again and stated that the "white-over-green" Pontiac was at that moment passing the cruiser still on the scene. Poirier advised the dispatcher that it was his unit that was at 7th and S Streets, made a U-turn in the cruiser to head in the suspect's direction, and then pulled over the automobile, which appeared to him to be a white-over-green Pontiac. Poirier parked the cruiser directly behind the suspect automobile. Another policeman, Officer Gregory, arrived in his cruiser immediately thereafter, pulling up next to the stopped vehicle.

As Poirier got out of his cruiser and approached the suspect from the driver's side, he noticed that the car was in fact a Chevrolet Monte Carlo, not a Pontiac as he originally thought and as he had been led to believe by the police broadcast. He nevertheless drew his revolver and ordered the suspect, later identified as appellant, to come out of the car with his hands up. Appellant complied, and then was directed to the rear of the Chevrolet where he was ordered to place his hands on the trunk.

Officer Gregory had been standing near the driver's door of the Chevrolet when appellant was ordered to step out. After appellant did so, Gregory noticed a set of metal knuckles on the car floor. He quickly confiscated them and went to the rear of the car to confer with Poirier. Shortly thereafter, appellant was arrested. A subsequent search of the Chevrolet incident to the arrest turned up an eleven inch lead-filled club which was hidden under the driver's seat. That too was confiscated.[3]

## II

■ Appellant argues here, as he did below, that the police lacked a reasonable and articulable suspicion that he was engaged in criminal conduct and therefore had no basis for stopping his vehicle under *Terry v. Ohio, supra* note 1.[4] He contends that the court erred in concluding otherwise for Officer Poirier's purported "reasonable and articulable suspicion" derived solely from the abbreviated tip broadcast by the dispatcher: that a man with a gun was at 7th and S Streets in a "white-over-green" Pontiac and, at a particular moment, was travelling by the police cruiser still on the scene. Appellant attempts to cast further doubt on the validity of the stop by pointing to the undisputed facts that his car was a Chevrolet Monte Carlo, not a Pontiac; that Poirier testified that he was capable of distinguishing the two vehicles, and in fact noticed that he had stopped a Chevrolet before ordering appel-

---

**3.** Two women were in the automobile with appellant when it was stopped. It appears that they were interviewed by Officer Herman and then released.

**4.** At the hearing on the suppression motion, appellant maintained alternatively that the *Terry* stop was actually an arrest and, since it was

not supported by probable cause, was unlawful. Appellant has apparently abandoned that theory in his arguments to this court. In any event, we do not characterize the officers' initial stop and detainment in this case as an arrest. *Compare Davis v. United States*, 498 A.2d 242, 245 (D.C. 1985).

lant to step out of the car; that the police had no "innocent details" by which to corroborate or verify the tip, such as a description of the suspect; and that he testified that his Monte Carlo was entirely green, as depicted in a photograph which was introduced into evidence at the suppression hearing. Moreover, appellant suggests that the trial court's reliance on *United States v. White*, 208 U.S.App.D.C. 289, 648 F.2d 29, *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981), in upholding the stop is misplaced as that case, he contends, is clearly distinguishable.

In examining the propriety of the police stop in this case, "the central question is whether the circumstances, at the time of the seizure, were such that the police officer reasonably could conclude, in light of his ... experience, that there was impending criminal activity." *United States v. Barnes*, 496 A.2d 1040, 1041–42 (D.C.1985) (citing *Terry v. Ohio, supra* note 1, 392 U.S. at 29–30, 88 S.Ct. at 1883–84, and footnote omitted). Of course, a limited, investigative seizure by the police need not be based on probable cause, as would an arrest, provided the police can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, supra* note 1, 392 U.S. at 21, 88 S.Ct. at 1879–80, (footnote omitted); *see United States v. McClinnhan*, 212 U.S. App.D.C. 368, 370, 660 F.2d 500, 502 (1981); *see generally United States v. Lewis*, 486 A.2d 729, 732–33 (D.C.1985). And it is well settled that an informant's tip may provide sufficient grounds for the limited *Terry* intrusion. *Adams v. Williams*, 407 U.S.

143, 147, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972); *United States v. Cousar*, 349 A.2d 454, 455 (D.C.1975).

■ We conclude that the trial court properly denied appellant's motion to suppress since, on the basis of the informant's tip, and Officer Poirier's subsequent observations, Poirier had reasonable grounds to suspect that the car he stopped contained a person in possession of a gun. The telephone caller's tips, as relayed by the dispatcher, informed Poirier that a man with a gun was at 7th and S Streets in a "white-over-green" Pontiac. While still at 7th and S, the dispatcher relayed to him that the white-over-green Pontiac was just then passing the cruiser that was still on the scene. Poirier made a U-turn in his cruiser and then stopped what he believed to be a white-over-green Pontiac. It was only upon closer examination that he realized the car was actually a Chevrolet Monte Carlo.[5] Yet, he testified at the suppression hearing that these two cars are similar in design. Indeed, based on the facts then known to him, it would have been poor police work by Poirier not to investigate further, particularly since in his mind the car appeared to him to be the car identified over the radio.[6]

Appellant's arguments do not persuade us that this stop was invalid under *Terry*. The information relayed to Poirier and his partner was specific enough in that it identified the type of car, its color combination, its location, and, most importantly, the fact that the car was at a particular moment passing his cruiser. Moreover, although as appellant notes there was evidence present-

---

**5.** Officer Poirier saw the name of the model on the back of the car.

**6.** In *Adams v. Williams, supra,* 407 U.S. at 145, 92 S.Ct. at 1923, Justice Rehnquist aptly observed:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be

the essence of good police work to adopt an intermediate response. *See* [*Terry v. Ohio,* 392 U.S. at 23 [88 S.Ct. at 1881]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.* at 21–22. [Other citations omitted.]

*See generally United States v. Barnes, supra,* 496 A.2d at 1044 (also citing *Terry* ).

ed to the contrary, Officer Poirier testified that the car he stopped in fact had a white-over-green color scheme. And, although admittedly appellant's automobile was a Chevrolet, Poirier testified that the two models are similar and that he initially thought he had pulled over a Pontiac, a mistake which may have been made also by the informant.

█ It is true that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams, supra,* 407 U.S. at 147, 92 S.Ct. at 1924. Appellant suggests that the informant's tip in the instant case was unreliable because it was not buttressed by independent corroboration or verification by the police. We disagree. Not only was the informant willing to identify himself here, but he also called twice, in an apparent effort the second time to rejuvenate the once unsuccessful police investigation. Moreover, when he called the second time, it was apparent that he was personally observing the occurrence he was then describing. *See Lawson v. United States,* 360 A.2d 38, 40 (D.C.1976). The informant was able to direct the officers' attention to a specific car at a specific location. All things considered, we view the informant's tip as sufficiently reliable to warrant a *Terry* stop. *See generally id.; compare United States v. Cousar, supra,* 349 A.2d at 456–58 (Kern, J., concurring).[7]

We conclude that the seizure here was lawful. Consequently, the subsequent confiscation of the brass knuckles, which concededly were in plain view, was permissible and gave rise to probable cause to arrest appellant.[8]

*Affirmed.*

---

7. *United States v. White, supra,* cited by the trial judge, is factually distinguishable in some respects. This, of course, does not affect our judgment here that the *Terry* stop was permissible.

MACK, Associate Judge, dissenting:

I respectfully dissent. *Cf. Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

---

8. Appellant does not challenge the validity or extent of the search incident to his arrest, which led to the seizure of the lead-filled club, except insofar as it resulted from an invalid *Terry* stop.